THIS is an ejectment, brought on the demise of John Kincaid, who, on the trial, gave in evidence the act of assembly of this state regulating the town of Lancaster ; and it was admitted, that the claim of Bu. ford, referred to in the act, originated under the laws of Virginia. Next, a deed was given in evidence from the trustees of Lancaster to Elijah Sartan, dated 9th of April 1811, for the lot in contest; also,'a deed from; Elijah, Sartan to Lewis Haller, dated 27th March 1816. Next, a deed from Lewis Haller to John Harm, dated the 14th February 1815. This last is a deed of trust, intended to secure the payment of a sum of money, and conditioned that if the money was paid on a certain day, the deed should be void; but if not then. *391 paid, Hann was authorised to sell the lot at public auction, for the best price he could, by previously ad. vertising the time and place of sale, at the most pub. lie places in Lancaster, ten days previously ; and to apply the proceeds of the sale to the payment of the debt. Next followed a conveyance from John Hann to William M. Bledsoe, reciting that Hann, on the failure of said Haller to pay the stipulated sum, had exposed the lots to sale, according to the deed of trust, and that Bledsoe became the highest bidder and purchaser 5 hence, the estate is conveyed to him. This deed is dated on the day of sale, which is the 15th December 1817. Lastly, was read a .conveyance of the same estate, from Bledsoe to the lessor of the plaintiff, dated on the 16th February 1818.
The plaintiff then proved by parol, that the sale under the deed of trust from Hann to Bledsoe, was made on the premises, after the previous advertisement re. quired by the deed of trust; that several attended, and the sale was fair, and there were other bidders besides Bledsoe, who seemed to be active in the sale, and had written the advertisement; and to whom, as the wit. nesses understood, Hann had assigned the note of Haller, which the deed of trust was given to secure. One of the plaintiff’s witnesses, being interrogated, said, that he had taken a lease of the premises in question, from Aldridge, the defendant below, and occupied it under him from the 1st of March 1817, until the last of December or first of January following, during which, the sale under the deed of trust took place; that his lease was for one year, but he moved and left the premises vacant, and the next day Bledsoe took possession, but was expelled by a warrant of forcible entry and detainer, brought at the suit of Aldridge.
The court, on this state of the evidence, without its appearing how the defendant held the lot in question, instructed the jury, on the application of the plaintiff below, that the evidence showed title in the lessor of the plaintiff. This instruction is opposed, on the. ground that the conveyance by deed of trust from Haller to Hanu, is dated before the deed from Sartau to Haller, and therefore Haller had no title to convey; and it is further contended, that it being shown that Aldridge, the now defehdant, was in possession by his *392 tenant, at the date of the sale under the deed of trust from Hann to Bledsoe, the sale is void, under the act of assembly of Virginia against making or conveying pretensed titles.
A title acquired by a vender of land subsequent to his sale and conveyance, will enure to the use of his vendee; and for the benefit of the vendee will every deed which he takes after ■ such sale ana conveyance, be construed to have been taken by him.
*392 As the defendant below appeared in evidence at this stage of the cause, he had no right or claim, excepta hare possession. No title is shown in any other person, or originating in any other way, than that vested in the trustees of Lancaster. The establishment of Lancaster by the county court, if there was no adverse claim to the land, was adequate to give the-trustees a title, and the possession; and as there is admitted to be a claim in Buford, derived from the laws of Virginia, the establishment of Lancaster with his consent, could and would pass his title and possession, as well as that of the government, to the trustees. They could sell and convey, as they did, to Sartan ; and at this period there does not appear to have been any possession in Aldridge. While Sartan held the title, Haller, who does not appear to have had any interest, conveyed to Hann, with warranty, and afterwards received a conveyance from Sartan, who really possessed the estate; and all this had taken place previous to any possession apparent in Aldridge. The question then results, does his subsequent entry, admitting it to be adverse without title, and his present possession, authorise him to avail himself of this defect of title in Haller when he conveyed to Hann $ or does the subsequent acquisition of title by Haller, inure to the benefit of Hann, so as to enable him or his assigns to recover against a bare intruder ?
2. We are of opinion, that the title subsequently acquired by Haller, did inure to the benefit of his vendee, and Haller must be construed as taking the deed for his benefit. The only objection to this, is, that estoppels must be mutual, and cannot operate against a stranger, to prevent his showing the truth, viz. that Haller had no title. But the application of the doctrine to Aldridge, does not estop him from showing the truth, more than a deed from Haller, after the reception of his deed from Sartan, would debar him from saying that Hann had not got the title which Haller held. Whether the deed to Haller was made before or afterwards, it was, as to Aldridge, “ res inter alios acta,” and does not operate as* an estoppel. It was *393 ¡Sufficient for the plaintiff below to show that the real title had passed to Haller, and that such transactions had taken place between him and Hann, as passed that title to Hann, or authorised him to use it for his benefit, without Haller’s control.—See Massie vs. Sebastian, 4 Bibb 433.
The act of 1798, concerning champerty and maintenance, does • not merely release the 'contracting parties from the fines, forfeitures and penalties imposed by former Jaws { but renders the conveyances valid and effectual to pass the title.
Wherever the original title was derived from the laws of Virginia, the act operates-, however numerous the ¿ohveyatVc'es maybe, between Jhe patentee and plaintiff.
*393 But if the instruction had been erroneous, it might be a matter of some’ doubt, whether, for that cause, the judgment ought to have been reversed ; for, directly afterwards, the defendant below introduced a deed from Haller to himself, subsequent to Haller’s acquiring the title from Sartan ; thus showing that he claimed under the same vender, and under the trustees, so that he was by no means a stranger to the title.
As Aldridge was in possession, claiming under this deed, at the time of the sale under the deed of trust from Hann to Bledsoe, and from Bledsoe to the lessor of the plaintiff, it was contended in the court below, and is insisted upon in this court, that lie held such an adverse possession, at the time of these sales, as precluded their operation, and prevented the title from passing.
3. It is a principle or the common law, arded and af firmed by a statute of Virginia, passed in 1(2 Lilt. 569,) that land was not the subject of sale, unless the vender had the possession, or where, there was an adverse possession, and that a conveyance under such circumstances passed no title. But the legislature of this state, with regard to titles derived from the laws of Virginia, has thought proper to change this ruleof property, by providing, “ that no person purchasing or procuring an interest in any legal or equitable claim to land, held under the land laws of Virginia, now the laws of this state, shall be precluded from prosecuting or defending said claim, under such purchase or contract; neither shall any suit or suits brought to establish such purchase, or make good the title to sudi claim, be considered as coming within the provisions, either at common law or by statute, against champerty or maintenance, any law to the contrary notwithstanding.”
It may be contended, that as this law relieves such cases from the laws against champerty and mainte nance, it was only intended to ward off the penalties in cases where a nurchaser maintained the. suit, and *394 had contracted for the land, or part o‘f it, and that the title still did not pass by the deed, but the purchaser most still pursue his object in the name of his venddr. However plausible this construction may be, and however much we might have been disposed to adopt it, were it res nova, the act has received a different construction by the supreme court of the United States, in the case of Walden vs. the heirs of Gratz, 2 Wheat. 295. Although this decision is not on a point which could he deemed obligatory on this court, yet, as in matters of construction the opinions, of that court are entitled to high respect, we conceive it most proper to adopt it, as ours. It cannot be contended that this act has violated the compact with Virginia, or any constitutional provision j for, instead of rendering titles derived from Virginia, invalid or insecure, it has made them, where trammelled by an adverse possession, the articles of market, and,lias afforded them facilities in remedy, which they did not possess at the separation of the two states ; and with the policy of the measure; we have nothing to do. As it is admitted that the title in question was derived under the laws of Virginia; however numerous the conveyances may have been from that original title, the right, according to thé words of this act, would pass, and, the purchaser had remedy to coerce it. The court below, therefore, did right in deciding in favor of the title of the lessor of the plaintiff.
It has been contended, that the deed of trust from llaller to Hann ought only to he construed as a mortgage, although it gave express authority to sell, and that the intervention of a court of equity was necessary to authorise a sale- We cannot conceive this objection entitled to any weight. Suppose the deed is to be construed as a mortgage, it still, after the condition is broken, passes the complete legal estate, to which iegál remedies are attached; and it is competent for the mortgagee to sell and convey his interest, as well as other holders of estates at law, and his vendee could support an ejectment for the land. It will be time enough to decide this question, on a hill filed to redeem.
The defendant below offered to give in evidence a grant from the commonwealth to James Speed, covering the lot in controversy; but the court refused to *395 permit the grant to be given in evidence, and we con» ceive, properly; for. the defendant liad, at this stage, shown that he claimed title, as well as the plaintiff» under the trustees of Lancaster, and also that he held by deed from Haller, who had previously conveyed, with warranty, the title of the lessor of the plaintiff | and the grant offered was posterior in date to. the act of assembly which recognized the title to be in the trustees of Lancaster, and therefore could not take, away the right of entry granted by the establishment of the town, or give to any other, such right, superior to that given by the order of the county court establishing Lancaster, and the act which recognized that establis hment.
The patent was, therefore, properly rejected, and we discover no error in the judgment of the court below. It must, therefore, be affirmed with costs.