*Shuck* for plaintiffs: *Harlan & Craddock* for defen-dants.

---

## Ring *vs* Gray.

APPEAL FROM THE MUHLENBURG CIRCUIT.

*Ejectment. Evidence. Admissions. Conveyances.*

JUDGE BRECK delivered the opinion of the Court.

THIS was an ejectment for four hundred acres of land lying in the county of Todd, in which a verdict and judg-ment having been rendered against Ring, the defendant, he has appealed to this Court.

The declaration contained three separate demises, from Gray, Huling and Cravens. The Court, on motion, dismissed the one in the name of Cravens, it appearing that he was dead before the commencement of the action.

The plaintiff, in support of his claim, relied upon a grant from the Commonwealth to Huling, bearing date in November, 1819, and upon three deeds; the first a Sheriff's deed to John Lindley, who was a purchaser of the land in contest, under an execution against Huling, the patentee, in May, 1824. The second a Sheriff's deed to Gray, who was a purchaser in August, 1827, under execution against Lindley, and the third also a Sheriff's deed to Gray, as a purchaser under execution against William Cravens, in 1839. He also proved that defendant was in possession before and at the institution of the suit.

The defendant then read in evidence, having proved the execution thereof, a deed from Huling to Cravens for the same land, bearing date December, 1819, and also a deed from Azariah Davis, Lindley, Cravens and others, to the heirs of Tho. Ring, of whom the defendant was one, dated in December, 1824; also a Sheriff's deed to Mary Ring, the widow of Thomas Ring, as a purchaser under execution against Lindley, in June, 1824. The defendant also introduced testimony conducing to prove that the widow and heirs of Thomas Ring obtained possession of the land in 1815, and that they or some of them, had ever since continued in possession and claimed it; that at the time Gray made his purchases, he knew of the deed from Huling to Cravens, and from Davis, Lindley, and others, to Ring's heirs, and that they were in possession.

The plaintiff then introduced a record from the Logan Circuit Court, showing that the sale to Mary Ring had been quashed and the deed set aside in 1826; also the copy of a record from the Chancery Court in the State of Tennessee. This was a suit in chancery instituted by the administrator of Thomas Ring against Azariah Davis and others, in which the heirs of Ring were also parties, for the rescission of an executory contract between Thomas Ring and Davis, made in 1814, for three hun-

RING
vs
GRAY.

Case stated and plaintiff's title.

Defence.

Ring
vs
Gray.

dred acres of land sold by Davis to Ring. This record, together with other testimony adduced by the plaintiff, conduced to prove that the land purchased by Ring from Davis, was part of the land in contest, and that the deed from Davis and others to Ring's heirs, was not delivered.

On the part of the appellant it is insisted that the Court below permitted illegal testimony on the behalf of the plaintiff to be introduced, and also ruled the law erroneously, and to the prejudice of the defendant, in giving and refusing instructions to the jury.

The defendant objected to the record of the chancery suit in Tennessee, but the Court permitted the entire record to go as evidence to the jury, and refused to instruct them that the statements in the answer of Davis, and of the other defendants, except the defendant, Ring, now the appellant, were not testimony. The object of that suit, as we have seen, was a rescission of the contract between Davis and Thomas Ring, for three hundred acres of the land in controversy. That contract was rescinded, and an equitable lien upon the land decreed the representative of Ring, for the amount due from Davis on account of the purchase money which he had received. We do not perceive that the subject matter of that suit or the final disposition of it, has any particular bearing upon this. The fact that Ring purchased from Davis, and that his widow and heirs, in virtue of that purchase, entered upon and held the land, does not prove that they looked to Huling or Lindley for title, or that their possession was not adverse to both of them. But notwithstanding the matters controverted and decided in that case might have no bearing upon this, yet we think the answer of the defendant, Ring, contains statements and admits facts, which have a direct bearing upon some material points in this case. His answer was filed in 1829. He states in it that the three hundred acres purchased by his father from Davis, was embraced in the patent to Huling; that Davis had made no deed for the land; and that none had been made by Huling. He admits the purchase by Lindley under execution against Huling, and also Gray's purchase under execution against Lindley. These statements and admissions, and perhaps some others in the answer, have

Admissions in an answer are evidence against the party making them.

some bearing upon this case, and the record was competent to establish them. But further than the facts stated or admitted by the answer of the defendant, Ring, expressly or by implication, we think the record was incompetent.

The answer of Davis was filed in 1827, long after his contract with Thomas Ring and the date of the deed to his heirs. His statements, it is very manifest, we think, could not be used as evidence against the defendant. The statements of a vendor in regard to his title and the manner in which he held, made before sale, but not afterwards, may be used against his vendee. We are of opinion, therefore, that the Court erred in permitting the entire record to go as evidence to the jury, and in refusing to instruct them that the statements in the answer of Davis and other defendants, were not testimony.

It is also insisted that the Circuit Judge erred in permitting the depositions of Lindley and Jeremiah Cravens to be read as evidence by the plaintiff. Lindley was one of the grantors in the deed to Ring's heirs, and Cravens also executed it as attorney in fact for William Cravens. The objection was to the competency of the witnesses and also their testimony, which conduces to prove that the deed was not delivered to the grantees and was not to be delivered, except conditionally; that it was made to aid Davis in the chancery suit in Tennessee, and was not to be effectual as a conveyance, till the residue of the purchase money, due by Ring's representatives to Davis, or his assignees, was paid. It does not appear that either Lindley or Cravens had any interest in this suit, which would render them incompetent as witnesses for the plaintiff. The consideration expressed in the deed as to Lindley and Cravens, was nominal, being one dollar, and it contained a covenant of warranty only against persons claiming under them. Their testimony is not inconsistent with any thing contained in the deed. It was competent for the plaintiff to show that the deed was not delivered, and the testimony conduces to prove that fact, and to that extent we have no doubt of its competency. But in regard to this testimony or that of Lindley, the Court instructed the jury so that they could not

—But statements by a vendor after he has sold the property, to the title of which the confessions relate, are not evidence against his vendee.

RING
vs
GRAY.

well be misled as to the effect of the testimony. We are of opinion, therefore, that the overruling the defendant's exception to these depositions, when taken in connection with the instructions to the jury, furnishes no ground for a reversal.

In regard to the instructions touching the merits of the controversy, we will not stop here to examine them in detail, but will first consider the legal questions involved in the case, and presented by the record.

*The legal questions involved in this trial in the Circuit Court.*

This suit was commenced in October, 1839, which was within twenty years from the emanation of the grant to Huling; no question of limitation, therefore, arises, notwithstanding the Rings had been in possession more than twenty years before the plaintiff commenced his action.

*Limitation does not run vs plaintiff in ejectment until the emanation of the patent under which he claims.*

The deed from Huling to Cravens, although made in 1819, was not recorded till 1821. But whether recorded in time, or at all, the title as between Huling and Cravens, would pass, provided Huling was authorized to make it, and in that event, on his demise, there could be no recovery in this case. But upon the supposition that the Rings were, at the time, in the adverse possession, the conveyance, even as between the parties, would be void, and Huling would be authorized to treat it as such, and sue in his own name.

*As between grantor and grantee, a deed, tho' not recorded, passes the title, unless there was an adversary possession.*

The act of Virginia of 1786, entitled, "an act against taking or conveying pretended titles," and also the common law, prohibited the conveyance of lands, unless the grantor, or those claiming under him, had been in possession thereof, or of the reversion or remainder thereof, one whole year, before the making such conveyance. Our statute of 1798, "concerning champerty and maintenance," (1 *Stat. Law*, 284,) repealed the act of 1786, and the common law upon this subject, only as to claims to land *held under the laws of Virginia*. This construction is very clearly recognized by this Court in *Aldridge* vs *Kincaid*, ( 2 *Litt.* 390 ;) and *McConnell* vs *Brown*, (5 *Monroe*, 478,) and is conformable to the very letter of the statute. The title of Huling was not held under nor derived from the laws of Virginia, but was based upon a certificate of the County Court of Logan, in 1805, granted under an act of the Legislature of Kentucky of

*The champerty act of 1786, declared conveyances void unless the grantor had been in possession one year before the conveyance made, was repealed by the statute of Kentucky of 1798, only as to titles to land derived from Virginia.*

1800, and consequently was not embraced by the act of 1798. This conveyance to Cravens was, therefore, void, provided the land was, at the time, held adversely, and opposed no obstacle to the plaintiff's recovery upon the demise of Huling, as decided in *Merideth* vs *Kennedy*, (*Litt. Sel. Cases*, 522.) But if the possession was not adverse, then as between the parties, Cravens was invested with Huling's title, and of course there could be no recovery upon the demise of the latter.

Gray claimed title, as we have seen, in virtue of his purchase under execution against Lindley, and also of his purchase under execution against Cravens. There being no confliction in the testimony as to the death of Cravens before the levy and sale under execution against him, that branch of the case, as the record now stands, may be regarded as free from difficulty or doubt.

If, at the time of Gray's purchase under execution against Lindley, or of Lindley's purchase under execution against Huling, the possession was adverse to Lindley in the one case, or to Huling in the other, the land was not subject to sale by execution, and no title passed by the conveyance to Gray, as was held by this Court in *McConnell* vs *Brown*, *supra*, and *Shepherd* vs *McIntire*, (4 *J. J. Marshall*, 112.) But if the possession at the time of neither of the sales, was adverse, then the question arises whether the deed from Huling to Cravens, or the deed from Davis and others to Ring's heirs, can affect the sales, or either of them. Neither of the deeds having been recorded within the period required by law, under the act of 1796, regulating conveyances, they were void as to creditors, as was decided in *Helm* vs *Logan's heirs*, (4 *Bibb*, '78,) and *Graham* vs *Samuel*, (1 *Dana*, 166.) It is true that Ring's heirs were in possession at the date of the deed from Davis, &c., and in that respect this case differs from the cases cited. In those cases the possession was in the grantor.

The statute provides, in express terms, that no conveyance shall be good against any creditor, unless acknowledged and recorded, or lodged with the Clerk to be recorded, in the manner and within the time therein prescribed. It contains no exception in favor of gran-

RING
vs
GRAY.

Land held adversely to def't. in execution, is not subject to sale.

The registry law of Ky. of 1796, contains no saving in favor of a grantee *in possession*, who fails to have his deed recorded,

Ring
vs
Gray.

so far as credi-
tors and purcha-
sers are con-
cerned, in a con-
test *at law*. It
*may* be other-
wise in chnnce-
ry.

tees in possession, and we discover nothing in the act which authorizes the presumption that any was intended.

The obvious intention, we think, of the Legislature was, that unless the provisions of the statute be complied with in regard to the conveyance, the title, as respects creditors, should remain with the grantor, as though no conveyance had been made. Such was the opinion of this Court in *Campbell* vs *Moscby*, (*Litt. Sel. Ca.* 358,) although no question in that case seems to have been made in regard to the possession. In this view of the statute, the conveyance would be wholly unavailable for the protection of the vendee or grantee, by showing title in him, although in possession, against a sale of the legal title under execution against his vendor. Or in other words, an unrecorded deed as against a creditor, is wholly unavailable at law, to show title in the vendee, whether in possession or not, or whether the creditor or execution purchaser had notice thereof or not.

But such a deed is, nevertheless, good as between the parties and renders the possession of the vendee adverse. No princlple is better settled than that the possession of the grantee in a deed, is adverse to the grantor, and it is equally so as between them, whether the deed is recorded or not. Does the statute by declaring that an unrecorded deed shall not be good against a creditor, change the character of the possession as between the parties to such a deed? Does it convert an adverse into a friendly pos. session? We are not aware that it has ever been so de- cided, and we are not prepared to give it that construc- tion. It is true, as against a creditor, such a deed is held to be void. It is very clear, as we have seen, no title can be set up under it at law, but under certain circum. stances, it has been held available in equity. But al- though such is its character in view of the creditor, yet it is still a deed between the parties, and has the effect to render the possession adverse ; and this effect is not at all inconsistent with its invalidity in reference to the cre- ditor.

The possession
of a grantee in a
conveyance, is
adverse to the
grantors, wheth-
er the deed be
recorded or not.

The statute was no doubt designed to guard more par. ticularly against frauds and mischiefs resulting from the possession remaining with the vendor.

The possession of a *bona fide* purchaser for a valuable consideration, taken or held under an unrecorded deed of conveyance, is certainly no fraud upon creditors, and has never been so held; and although such conveyance cannot be relied on at law against the creditor, yet it would be efficacious against him or an execution purchaser in a Court of Equity. The possession of the vendee under such circumstances, being in point of fact, adverse to the grantor, the land would not be subject to sale under execution under the statute of 1798, as we have already seen.

It results that the purchase by Gray was not affected as to the legal title of Huling or Lindley, by either of the deeds in question, nor by actual notice of their existence, and that the Rings were in possession; except so far as the deed from Davis, &c. to Rings might, if delivered and accepted by them, render their possession adverse.

A further question arises in regard to the effect of the introduction by the defendant, of the deed from Davis, &c. to Ring's heirs. Was he thereby estopped from denying that he and the other heirs held adversely to Huling and Lindley? We think not. It is incumbent upon a purchaser of land under execution, to entitle him to the land, to show that it was subject to execution. So far as the plaintiff sought to recover upon the demise of Gray, it was material for him to show that the possession of the Rings was not adverse in the first instance, to Huling, and in the second, to Lindley. The deed does not prove that the defendant, or the heirs of Ring, looked to Huling for a title at the time of Lindley's purchase, or at the date of the deed. The testimony tends to prove that they were in possession, claiming the land as their own, long before Lindley's purchase. They had a right to purchase Lindley's claim, as an adversary or outstanding title. It was not the deed of the defendant, and cannot, therefore, as a deed, estop him from denying and showing that his possession, independant of it, was adverse, nor from denying that the grantors had title, according to the principle recognized in *Winlock* vs *Hardy*, (4 *Litt.* 274.) We are aware of no principle upon which it can be regarded as conclusive upon the defendant that

he entered and held friendly to Huling or Lindley, and looked to them for title.

In regard to the Sheriff's deed to Mary Ring, it is evident that while she held under it, her possession would be adverse to Lindley; but when the sale and the deed were annulled and set aside, the character of her possession would be the same as before she made the purchase and obtained the deed.

Such are our views upon the questions involved in this controversy, and it results, in reference to them, that the Court below mis-directed the jury, and to the prejudice of the defendant, in regard to the law applicable to the case.

Portions of the instructions given by the Court at the instance of the plaintiff, are inconsistent with the principles recognized in this opinion; others moved by the defendant and rejected, it will be perceived, are in conformity with our views of the law which should govern the case. As we have been explicit in disposing of the various questions which arise in the case, we deem it unnecessary more particularly to examine the numerous instructions moved upon the trial.

*The judgment is reversed and the cause remanded, that a new trial may be granted, and further proceedings had consistent with this opinion.*

*Underwood* for appellant: *Morehead & Reed* for appellee.