## Watson v. Wilson.

(Decided October 16, 1912.)

### Appeal from Carlisle Circuit Court.

1. **Land—Action to Recover—Champerty—Possession—Former Appeal.**—An inclosure is not generally necessary to sustain the character of possession necessary to sustain the champerty statute. Where one is a mere intruder the invocation of the champerty statute should be allowed only to the extent of his inclosure. (For a statement of facts, see 141 Ky. 328; 144 Ky. 352.)

2. **Same—Grants From Commonwealth—Evidence.**—It was not error for the trial court to refuse to admit in evidence grants from the Commonwealth tending to show that the mainland opposite the island had been patented by the Commonwealth prior to the grant of the island, as the title granted to the mainland ultimately descended to B. who became the owner of the middle part of the island now owned by appellee, and in a division of B's land, his mainland and island land descended to appellee.

JESSE F. NICHOLLS for appellant.

JOHN E. KANE and ROBBINS & THOMAS for appellee.

OPINION OF THE COURT BY JUDGE WINN—Affirming.

This action was begun below by T. J. Wilson to recover of Aaron Watson 200 acres of land. He lost below and brought his case here, where it was affirmed in 141 Ky., 328; but upon reconsideration, the opinion affirming was withdrawn and the case reversed in an opinion in 144 Ky., 352. Upon return of the case to the lower court, the jury found in favor of Wilson, the plaintiff; and from the judgment upon that verdict Watson appeals. The facts in the case are fully stated in the opinions, supra.

As we understand the appellant's position, he now has three principal grounds of complaint; first, that the instruction upon champerty did not extend to the entire land in controversy, but only to such part of it as was

actually enclosed at the time of the making of the deeds under which Wilson held; second, because the trial court refused to admit in evidence grants from the Commonwealth tending to show that the mainland opposite the island land in controversy had been patented by the Commonwealth prior to the grant of the island; third, because the trial court refused to submit to the jury an issue presented by Watson of limitation under section 2513 of the Kentucky Statutes.

On appellant's first complaint. Mrs. Hamilton's testimony is that she lived there nearly four years; that she went on the land in 1896; that her husband died in February, 1897, nearly twelve months from the time of going there; that she married her second husband in December, three years later, or in December, 1900, and moved away the same month; that when they went away she rented the land to Caulin; that she and her second husband returned to the land in seven months; that she had there a clearing under fence of about 15 acres; that she claimed the 200 acres; that so far as she knew there was no marked boundary around the 200 acres; that when she first went there (in February, 1896) they had a house on the lower south end of the place, but in the fall or winter built them a house on the north end of the north 100 acres where the fenced and cleared land was; that when she moved away in December, 1900, she left the house vacant; that when she returned in July, 1901, it was occupied, though she did not remember who occupied it; that she did not remain there all the time; that she rented to West Brothers one year; that her patent for the first 100 acres was dated December 31, 1897, and her patent for the second 100 acres was dated June 20, 1900. Wilson's deed to the island No. 3 land is of date January 31, 1898; and his deed to the towheads is of date November 25, 1899. Both are within the four year period (February, 1896—December, 1900) of Mrs. Johnson's (Hamilton's) residence there; both are of date after the date of her grant of the lower 100 acres in December, 1897; and both are of date before her grant to the upper 100 acres in June, 1900. She had left her house on the lower grant in the winter of 1896-7, and at the time of both the deeds to Wilson, she was living on the upper end of the upper 100 acres to which at the time she had no grant, nor of which had she made the preparatory survey.

Coming to apply these facts. An enclosure is not generally necessary to sustain the character of possession necessary to sustain the champerty statute. But as to the upper 100 acres, Mrs. Johnson, at the time of the deeds to Wilson, was a mere squatter without claim of title or paper title. She was a mere intruder; and as such her invocation of the champerty statute should be allowed only to the extent of her inclosure; and this the trial court's instruction allowed. Jones, et al. v. Gatliff, et al., 113 S. W., 436. In the case of Cardwell v. Sprigg, 1 B. Mon., 370, and in Mayes v. Kenton, 64 S. W., 728, it was said that "the possession of land which will render champertous and void a conveyance of the same land, between persons not in possession, must be an actual adverse possession, manifested by some act or fact sufficient to indicate to others that the person claiming to have been possessed had in fact the possession. There must be some open demonstration of actual occupancy, or at least of intended use, whereby the person bargaining for the land may have some clue for ascertaining that it is in the adverse possession of another." The fugitive acts of timber-cutting and the like, named by Mrs. Johnson, have frequently been declared to be no such possession; nor was there in proof any open demonstration of actual occupancy sufficient to put any bargainer for the upper 100 acres upon notice of any adverse claim, save to the extent of the inclosure. Certainly the trial court properly excluded the lower 100 acres from the instruction upon champerty; for though Mrs. Johnson had a grant to it at the time of the deeds to Wilson, she was then living not upon it but in an inclosure at the far end of another tract to which she had not the semblance of claim or right. Her constructive possession could not reach out over land to which she had no claim of title so as to include lands below to which she had claim. And her desultory proven acts upon the lower boundary were no greater than those upon the upper which we have declared insufficient to support the statute.

Nor is there anything in the second complaint. As is conceded in the brief of appellant's counsel, the title granted to the mainland to one David Ross, prior to the grant by the Commonwealth of island No. 3 ultimately descended to one Josiah Brummal. This same Josiah Brummal became also the owner of the middle part of island No. 3 now owned by Wilson. In a division of his

lands, his mainland land fell to one portion of his heirs and the island land to another portion, ultimately descending to Wilson. Commissioner's deeds were made perfecting this division. The effect of this partition of the Brummal lands was to create the condition named in the reversing opinion in this case in 144 Ky., 352, where it was concluded that where a permanent island had by conveyance come to be considered as the mainland, its lands would be considered opposite sides to the two shore owners. Certainly, when in the division of the lands among Brummal's heirs, the island land was allotted to one set of them and the mainland to another set, the island thereafter continued an opposite side to the mainland owner and carried with it all such incidental rights of accretion as would the mainland itself. The proof discloses that the Brummal land on island No. 3 did not extend down to the lower extremity of the island. Nothing in the record definitely discloses whether or not all the land in controversy lay opposite to the Brummal island land owned by Wilson, though the map in evidence fairly conduces to show that such was its location. The ancient grant by the Commonwealth of the mainland to David Ross had no place in the evidence; for while its boundaries are the same as those described in the partition deed of the Brummal shore land, the appellant Watson's testimony only said it was opposite to the land in controversy, but did not say that there did not lie between them and the Brummal island land, by the Brummal partition converted into land with shore land rights and attributes. When once Wilson had made out his case by showing his record ownership under title descending from grants prior to the grants under which Watson claimed, and that the land in controversy was land built up from the river west of his such lands, he had made his case. Watson had the right then to attack the case by showing grants to the mainland opposite the controverted lands, if the mainland grants were older than the island grants, provided he further showed that the controverted lands were not opposite the Brummal island lands owned by Wilson, and endowed with the same littoral rights as mainland. This he failed to do. There was no error, therefore, in excluding the Ross grant. Avey himself, the owner of the Brummal mainland, said he did not know where the controverted lands were, so he could not speak on the subject. As to the

rights between Wilson and Avey we have no concern here.

Upon the return of the case to the trial court Watson filed an amended answer pleading the seven-year statute of limitation provided by section 2513 of the Kentucky Statutes. It is a matter of grave doubt whether that statute is to be applied to a case like this; but this need not be determined. Again, it will be recalled that up to June 20, 1900, the day of the grant of the upper boundary, Mrs. Hamilton was living in a small inclosure on its upper end, a "squatter" without any title to it "deducible of record from the Commonwealth." Nor could her living there prior to June 20, 1900, by any implication of law be held to be an occupancy of the lower 100 acres for which she had the grant. Residence upon is an essential element of the occupancy of land, within the meaning of the statute. "Seven years' occupancy will not bar, but seven years' residence on the land only. An occupancy may exist without a residence." Chiles v. Jones, et al., 4 Dana, 479. If now it be conceded that after June 20, 1900, the date of the grant to her of the land upon which Mrs. Hamilton then was living her residence can be assumed to have extended from it to include the adjoining 100 acres in the prior grant to her, there is then presented for the first time on June 20, 1900, the necessary contemporary elements of an occupancy by residence upon the land, and a claim to the land deducible of record from the Commonwealth. Statutes, section 2513. The statute, therefore, did not begin to run before that date. Did such an occupancy and claim extend for seven years thereafter? The evidence must answer in the affirmative, or the request for the statute's application must be refused. Mrs. Hamilton's testimony undertakes to say nothing of any possession by her or her tenants after her sale to G. B. Watson in 1902. There is a good deal of testimony of a somewhat unintelligible character of possession under Mrs. Hamilton, which it is unnecessary to dissect or unravel. Let it be granted that from June 20, 1900, to October 4, 1902, the date of her deed to G. B. Watson she was in the possession of the kind and character demanded by the statute. Here appellant Watson takes up the thread of the evidence. He says that his brother G. B. Watson, had Maxberry on the land in 1903, Massie in 1904, and Maxberry in 1905; that it is

his recollection that his brother cultivated it himself in 1906; that there was somebody constantly on it up to 1905, and that he thinks there was in 1906. Here all testimony as to occupancy and residence stops. Seven years from June 20, 1900, ended on June 20, 1907. The testimony which might be called certain ended with 1905. There is doubtful testimony as to 1906. There is no sort of testimony as to 1907. Further, by the express terms of the statute, it runs only in favor of an occupant. There is nothing to show that Watson was an occupant of the land in any manner during any part of 1907. The trial court properly refused to instruct under the statute. Appellant's proof indicates that he relied upon the possession of Mrs. Johnson and her tenants back of June 20, 1900, a period of time when her residence and occupancy was of land to which she had had no title deducible from the Commonwealth.

The appellant seriously argues that inasmuch as this action was brought in ejectment, with the accompanying statement that Watson was in possession, that statement of necessity must relate back and admit possession in him and his predecessors in title from the time of the original grants to Mrs. Johnson (Hamilton). She herself did not testify as to any true possession, save as to the small inclosure during the four years that she was there. Of necessity, the possession which Wilson sought to oust has accrued since that time.

It is also argued that the same instruction upon champerty should have been given upon this trial as upon the first beause it was not expressly disapproved there. The instruction which was given upon this trial conformed to the facts proven on this trial.

Appellant seriously complains that a plat in the evidence shows that one Mr. Turk owns a boundary of land wedge-shaping down between Wilson's land on island No. 3 and the upper 100 acres in controversy here. Had the evidence extended so far as to show that Mr. Turk, or those under whom he claims, were the lawful owners of this land, as against Mr. Wilson, there might be something in this position. In the absence of such evidence that question is not here. When Wilson showed his record ownership of the island land deduced from the Commonwealth and that the land out west of it had been built up by accretions, he made his case complete as to the lands west of him; and if there were anything

to weaken his case, such as some other ownership by Turk under claim of title superior to Wilson's the burden was upon Watson to show it.

There was no error in the giving of instruction D, because under the facts proven the two grants to Mrs. Wilson were void; nor was there any error in giving instruction E, for it but stated a fact which the evidence had established.

For the reasons given, the judgment of the trial court is affirmed.