## Blalock v. Darnell.

(Decided April 22, 1921.)

### Appeal from Caldwell Circuit Court.

1. **Champerty and Maintenance—Possession.**—The actual possession of one under a title bond is sufficient to support the defense of champerty against one who purchases the land or any portion of it while so possessed, since such possession need not be by one who has the legal title.

2. **Appeal and Error—Evidence.**—Where the evidence is conflicting, a verdict of a jury will not be disturbed upon the ground of its

being flagrantly against the evidence, even though it be against
the preponderance of the evidence.

3.   Ejectment—Quieting Title—Description—Misprision.—A judgment
     in an ejectment suit, or one to quiet title, should describe the land
     sufficienty to locate it, but it will not be reversed for its failure to
     do so if such description is contained in the record, since it may
     be corrected, as a misprision, at any time upon notice; but this
     rule does not apply to a judgment for the sale of land, since the
     officer making the sale is not required to look to anything but the
     judgment in executing it.

J. ELLIOTT BAKER for appellant.

S. D. HODGE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This controversy is between two neighbors, appellant
and plaintiff below, W. H. Blalock, and appellee and de-
fendant below, M. V. Darnell, who owned adjoining
tracts of land in Caldwell county, as to the real boundary
between them on plaintiff's south and west lines. The
plaintiff's tract is described in his deed as containing
99½ acres while that of defendant is described as con-
taining 201½ acres, and his tract bounds that of plain-
tiff on both its southern and western lines. The amount
of land involved is a strip about 13 feet wide on plain-
tiff's southern line and a strip about 2½ or 3 poles wide
on his western line. The pleadings put in issue the title
to those two strips and defendant also interposed a plea
of champerty. The court by its instructions submitted
to the jury only the issue as to the true location of plain-
tiff's south and west lines as described in his deed, and
as described on a plat made by the county surveyor and
introduced as evidence, and directed it to find for him if
his line, as thus located, included the land in controversy;
but to find for the defendant all of the land in contro-
versy outside of plaintiff's lines so located. Defendant
offered a number of instructions, one of which submitted
the defense of champerty, but the court declined to give
any of them, to which defendant excepted, as he also did
to the instructions given by the court, but plaintiff did
not except to any of the court's instructions. The jury
returned a verdict in favor of deferdant; whereupon the
court rendered this judgment:

"Wherefore, it is adjudged by the court that plain-
tiff's line is defendant's line, and that plaintiff's line is

that line indicated on plat No. 2, as the red or brown line running from the letter 'D' to the letter 'C,' to letter 'B,' and it is further adjudged by the court that defendant recover of plaintiff his cost herein expended for which execution may issue and this cause is stricken from the docket.''

The motion for a new trial makes the complaint against the verdict that: ''The verdict of the jury is not sustained by sufficient evidence, and is contrary to the law and the evidence and is against the law and the evidence;'' and this is the only ground relied on in the motion.

The undisputed facts are, that prior to 1904 J. M. Wolf owned a tract of land in Caldwell county containing 420 acres which he sold to B. D. Menser and J. E. Hayes. Some time in December of that year Menser and Hayes divided that tract into four parcels. Number three, supposed to contain 99½ acres, is the one now owned by plaintiff and number four, supposed to contain 201½ acres, is now owned by defendant. In 1906 defendant purchased by title bond his tract and moved upon it in January, 1907. Shortly thereafter he located the line between him and the 99½ acre tract now owned by plaintiff and built a fence a part of the way which enclosed a horse lot, and between that year and 1910, when plaintiff obtained his deed, defendant cultivated a large part, if not all, of the strip in controversy on the west side of plaintiff's farm, and at some time placed fence posts at the point which he now claims is the true line, and each of the lines was thus occupied at the time plaintiff obtained his deed, although at that time defendant had not obtained a deed and did not do so until 1913, but as stated, he took possession under his title bond in 1907. Under these circumstances we think the court should have submitted to the jury the defense of champerty, and we are furthermore convinced that the evidence supporting it was practically uncontradicted. The court, however, was of the opinion, as we gather, that the champerty plea would not apply because of the fact that defendant did not obtain his deed until 1913, three years after plaintiff obtained his. In this we think the court was in error, since the purchase of land, which at the time is in the open, notorious, hostile and actual possession of another, claiming the title, constitutes champerty, whether the one in possession holds a legal paper title or not. 11 Corpus Juris,

pages 256-259, inclusive; Logan v. Phoenix, 23 Ky. L. R. 2300; Travis v. Bruce, 172 Ky. 340 and Perry v. Wilson, 183 Ky. 155. But, this question is not directly involved on this appeal and we mention it only for the purpose of showing that the judgment is correct though obtained upon another and entirely different ground.

Concerning the only ground relied on in the motion for a new trial, we agree with the trial court that counsel for plaintiff is mistaken in his contention that the verdict is either contrary to the evidence or flagrantly against it. W. L. Burks, a surveyor, divided the 420 acre tract for Menser and Hayes in 1904, and he made the Hardy Mill road the eastern line of plaintiff's tract and the beginning corner of it at a certain point in that road designated as marked by a stone. The boundary then ran from the stone in a north and northwesterly direction several calls to a post oak at the mouth of a lane, "thence south 15 W. 42 poles to a stone, thence north 76 W. 66 poles to a stone on the west side of a drain," thence in a southwesterly direction 15 poles, and "thence south 11½ E. 108½ poles to a hickory," thence east 155 poles to the beginning. The description of defendant's land, as contained in his deed, begins at a hickory near the Hardy Mill road, and corner to the Wolf 420 acre tract, and runs thence to the road and two calls in a northwesterly direction along the road "to a stone corner to Blalock's 99½ acre tract." It runs then west 155 poles to a hickory and "thence north 11½ W. 108½ poles to a stone in Mrs. Hunter's line a corner to Blalock's tract." The description then continues west and on around his entire tract to the beginning. The county surveyor of Caldwell county, somewhere near the time of the filing of this suit, surveyed plaintiff's land. The only way he could, or did, locate plaintiff's beginning corner was to reverse the calls between that corner and the white oak tree and running them according to courses and distances back to that corner, which ran plaintiff's south line 13 feet over in defendant's lot and across his line. In running the courses and distances from the same white oak to his southwest corner (the western terminus of the line of 155 poles) plaintiff's west line lapped on defendant's about 3 poles. It is indisputably shown by the proof that the branch or drain mentioned in the call of plaintiff's deed which reaches his northwest corner, and at which his deed calls for a stone on the west side of the drain, has changed, or

rather another branch has formed since Burks' survey, and the witness, McDowell, in order to get to the stone on what he thought was the correct branch, had to extend the line 3 poles. It is furthermore shown that in making his survey he did so with only ¼ degree variation when it should have been made with ¾ degree variation, there being 15 years between Burk's survey and his, and the proper allowance, according to the proof, is ¼ degree variation for each five years. It is furthermore shown that in locating the southwest corner of plaintiff's land, referred to by McDowell as the "Lost Corner," he ran by a hickory tree a little north of plaintiff's south line and about 33 feet east of his west line and the south line of plaintiff's tract was therefore extended 2 1/5 poles so as to meet his west line and to make his boundary close. It is furthermore shown that when the entire tract was divided by Burks in 1904 he located the beginning corner of the 99½ acre tract, which is designated in plaintiff's deed as marked by a stone, in the Hardy Mill road, and he marked a fence post which stood in the line running from that corner west 155 poles. Defendant and his witnesses in this case showed, beyond controversy, that when he took possession of his tract he claimed to that marked post and built his horse lot fence within a few feet of it and claimed to that line due west to plaintiff's southwest corner. There is no testimony in the record to show that plaintiff's tract, as bounded by the lines contended for by defendant, would not contain 99½ acres, and we think the evidence amply sufficient to show that the lines made by the surveyor Burks, in dividing the 420 acre tract, were as contended by defendant, which, if true, would necessarily result in upholding the verdict of the jury.

It is suggested in brief that the judgment appealed from does not properly describe the land in controversy and is so uncertain and indefinite as to require its reversal under the rule announced in the case of Foreman v. Redman, 9 Ky. L. R. 513; but we held in the case of Latham v. Lindsay, 130 Ky. 669, that where a judgment in an ejectment suit failed to describe the land recovered with sufficient certainty to enable the sheriff to locate it, the error was a clerical misprision and could be corrected by the court at any time upon proper notice, provided the record contained a sufficient description of the property, which was not true in the Foreman case. However, an insufficient description of land in a judgment which

directs the land to be sold may not be corrected in the manner indicated, since in that case "The judgment should be explicit in regard to the property ordered to be sold, as well as the time, terms, and place of sale, so that the commissioner should not be required to look to any other paper for order or direction." (Latham case, *supra*). Moreover, there was no objection made to the judgment here involved at the time it was rendered, nor was any motion made to correct it, nor is this error relied on in the motion for a new trial.

Finding no error prejudicial to appellant's substantial rights, the judgment is affirmed.