# Fordson Coal Co. v. Collins et al.

(Decided March 23, 1937.)

CLEON K. CALVERT for appellant.

J. M. MUNCY for appellees.

OPINION OF THE COURT BY JUDGE BAIRD—Reversing.

On February 14, 1931, appellant filed this action in the Leslie circuit court against Olen Collins and W. C. Collett for the purpose of obtaining a judgment to quiet its title to a tract of land of 50 acres situated in Leslie county, Ky. In a short time thereafter, Olen Collins died. The action was by proper orders revived in the name of his heirs, namely, Sarah Collins, his widow, individually, and as statutory guardian of his surviving children, etc. It alleged in its petition that it was the owner and in the actual possession of a tract of land situated on the waters of Phillip's fork of the Red Bird Ford of the south fork of the Kentucky river, and spe-

cifically described it by metes and bounds. Appellee denied its ownership and possession; affirmatively claimed ownership by a senior patent from the commonwealth of Kentucky. By an amendment later filed by appellees, they claimed ownership by adverse possession for more than thirty years and further alleged that they were in possession of the land when it was purchased and deeded to appellant and its vendors; that the title under which appellant claimed was void by reason of the statute of champerty, sections 210 and 211, Kentucky Statutes. On those issues the evidence was taken and a trial had resulting in a judgment in favor of appellees. Appellant appeals from that judgment.

The proof in the record is conclusive that appellant's chain of title to the commonwealth of Kentucky is complete. The 50-acre tract claimed by appellant was ceded to John Roark by Grant No. 36897, on January 25, 1866. From this patent by deeds in the record the title is traced satisfactorily and properly to appellant. Appellees by their original answer insist that the same land was patented and granted to Joseph Carey for 10,000 acres on September 21, 1797, a much older grant, which included the Roark grant of 50 acres; from the Carey grant they obtained their title. Accepting the fact that the Carey grant is the older one, we find from the evidence in the record that appellant in an equitable action, No. 4520, instituted by it in the Leslie circuit court, obtained a judgment at its August term, 1930, against the heirs and unknown heirs of Joseph Carey, deceased, who obtained the grant for the 10,000-acre survey, which adjudged that the title to the land was in appellant. Counsel for appellee practically concedes that to be true, or at least does not contend in his brief that his clients owned a title to the survey by virtue of the Carey patent; but, on the other hand, strenuously contends that his clients' title is made complete by the possession and claim of ownership of the 50-acre boundary by the adverse and continuous possession, use, and occupancy for more than fifteen years; also, contends that appellant's title is void because appellees and their vendors were always in the possession of the land, claiming it as their own, when it and its vendors purchased same, by reason of the law of champerty. The proper solution of those issues are derived solely from the evidence in the record.

It is insisted by counsel for appellees that W. C. Collett, his clients' vendor, purchased the land from two of the heirs of Ephraim Helton, deceased, on November 15, 1909. It is not disputed that at one time prior to the death of Ephraim Helton he owned the land in controversy. It is in proof, however, that prior to his death he and his wife conveyed the land to John S. Churchill, trustee, on September 26, 1890. Churchill was one of the vendors of the land now claimed by appellant and his deed constitutes one of the links in appellant's chain of title. It follows, therefore, that Ephraim Helton parted with his title in his lifetime leaving none at his death to descend to his heirs or his children. The deed to appellee from W. C. Collett of date, November 15, 1909, passed no title to appellees; therefore, his title under that deed was void; but it is in evidence that under that void deed the said W. C. Collett took possession of the land, undertook to clear some of it and to build a house on it. However, the proof is to the effect that immediately after his entering upon the premises and before he had built his house, he received notice from George V. Turner, by his agent, who at that time claimed to be the owner and in possession of the 50-acre tract, and who was one of appellant's remote vendors, to desist in his work and no longer continue in the erection of a house, or the clearing of the land. Immediately he stopped his work, etc., thereby surrendering his possession, if in fact he had any, to the land. Admitting that he took possession under this void deed, he would in effect be an intruder. The invocation of the champerty statute in any event would be allowed only to the extent of whatever inclosure he had made, if any, at the time. Watson v. Wilson, 150 Ky. 27, 149 S. W. 1120; Jones et al v. Gatliff et al. (Ky.) 113 S. W. 436.

The evidence tends to show by Caleb Collett, a son of W. C. Collett, who was twenty-three years of age at the time his testimony was given that his father never lived upon the land to his knowledge; that on one occasion after his father purchased the land from the Helton heirs, he showed him the land and announced to him that he bought the place in controversy at one time, but the company had taken it away from him; that he never heard his father in any way claim the land any more until he sold it to Olen Collins, the husband and father of appellees; that his father had never lived upon the

land in his lifetime, nor had ever leased it to any one to his knowledge; that one Enoch Brock did live upon it, but not as the tenant of his father. Nancy Collett, the widow of W. C. Collett, in substance stated, that her husband died in the year 1931, or within three years of the time she testified, which was 1934; that she lived with him for about twenty-five years. During all that time he never lived upon the land at all; that at one time he did attempt to cultivate a portion of it and to build a house upon it immediately after he purchased it from the Helton heirs, but Thomas A. Bird, agent of George V. Turner, who claimed to own the land at that time and who was a remote vendor of appellant, stopped him; that a short time after the death of her husband and a short time after he sold the farm to Olen Collins, Collins moved into the house in which Enoch Brock was then living and took with him some small articles, or "some stuff," as she called it, into the house; that she went with him to the house and remained there three or four nights; and at that time Enoch Brock, the tenant, had a few things in the house, such as bedsteads and stoves; that Enoch Brock was not a tenant of her husband or of Olen Collins, but was a subtenant under his brother, Chester Brock, who was a subtenant under his father, "Big Will" Brock, who was a tenant of one of the remote vendors of appellant.

The weight of the evidence is to the effect that the farm at all times has been in the actual possession of appellant and its vendors. The adverse possession and claim of ownership of appellees and their vendors has been spasmodic and only at times. To acquire title by adverse possession, the possession must not only be actual, but so contiued as to furnish a cause of action every day during the whole period prescribed by the statute (Ky. St., sec. 2505), which is fifteen years or more. Courtney v. Ashcraft, 105 S. W. 106, 31 Ky. Law Rep. 1324; Bibb v. Daniels, 183 Ky. 659, 210 S. W. 454; Mounce v. Hargis, 211 Ky. 761, 278 S. W. 107; Noe v. Russell, 217 Ky. 746, 281 S. W. 1033. See, also, Stephenson Lumber Co. v. Hurst et al., 259 Ky. 747, 83 S. W. (2d) 48, 53.

"To defeat title and constructive possession under a prior patent, a party claiming under a subsequent deed must prove actual, adverse, open, and continuous possession on the part of himself and vendors without

lapse of possession for as much as fifteen years before suit. Brown v. Wallace (Ky.) 116 S. W. 763; Hall v. Blanton, 77 S. W. 1110, 25 Ky. Law Rep. 1400; Patton v. Stewart, 173 Ky. 220, 190 S. W. 1062.'' Stephenson Lumber Co. v. Hurst et al, supra.

In other words, the adverse claimant must keep his flag of possession and claim of ownership waving, where it can be seen for the full statutory time. Asher v. Gibson et al., 198 Ky. 285, 248 S. W. 862; Stephenson Lumber Co. v. Hurst et al., supra.

As we view the evidence deduced from the entire record, we conclude that both the title and actual possession of the land in controversy has been at all times in appellant and its vendors. There is abundant proof together with a map filed in the record, showing the boundary of the land, and who claimed the two small fields, cultivated and fenced them; and who built the two houses on the 50-acre tract. The ownership and possession of appellant is complete. The tenants that erected the houses, cleared, fenced and cultivated the fields on the land were tenants, or subtenants of appellant and its vendors.

The evidence is of the further effect that Olen Collins purchased and undertook to take possession of the house occupied by the tenant, Enoch Brock, not in good faith, as we conclude, or with any confidence in his rights to the land, because it is in evidence undenied that a few days prior to Olen Collins' death, he sold and conveyed his interest in the land to John B. Nuchols and A. B. Morgan, chief witnesses, as the record shows in behalf of appellees, for the small sum of $10 with a promise of $90 more in the event the court adjudged him the actual owner of the land. This sale occurred during the pendency of this action. The deed was signed and acknowledged a few days before his death and by his wife a few days thereafter. Consequently, when the case was finally tried by the court below, the right, if any, to said land belonged to the said Nuchols and Morgan.

We are of the opinion now that the defense made by appellees is not attributable to any real legal right belonging to appellees, but it is based more on a chance or speculation on the part of the vendees of Olen Collins, etc. We think appellees have utterly failed to establish their claim to the land in controversy by their

plea of adverse possession, etc. It is true, when relying upon the statute of champerty, it is not necessary that the actual possession should have existed or continued for fifteen consecutive years before appellant could become the owner of the land or before its vendors could become the owners. However, sporadic acts of ownership and possession are insufficient to invoke the champerty act. Stephenson Lumber Co. v. Hurst et al., supra. It is true that appellees offer evidence to the effect that appellant and its vendors had no possession of the land, when Olen Collins and his vendors purchased and took possession of it; that their tenants cleared a portion of the land and had such possession, claiming ownership at the time appellant and his vendors received the conveyance of same. On the other hand, appellant disputes that contention and shows by a vast number of witnesses, on account of their opportunities and relationship to the parties, should better know the true facts, that at all times up to the institution of this action, appellant and its vendors had actual possession through tenants or subtenants; cleared, fenced, and cultivated that part of the land shown on the map, or drawing, filed in the record. Its tenants had possession when the deed of appellant and its vendors was executed.

We have therefore come to the definite conclusion that the title of appellant is perfect and valid; that it is entitled to peaceable and quiet use of same as against any interference on the part of appellees.

Wherefore, the judgment is reversed with further proceedings consistent with this opinion.