## Morning Star Baptist Church v. Bryant et al.

February 27, 1948.

J. S. Forester, Judge.

722

Cleon K. Calvert and M. F. Hall for appellant.

Astor Hogg for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

The appellant, The Morning Star Baptist Church, brought this suit in ejectment and to recover damages from Charley Bryant and his wife, Minnie Bryant. The trial court directed a verdict for the defendants on their claim of a better record title.

The property is a small lot in the shape of a triangle, located in Evarts. The church established its right of possession and chain of title as follows: On May 4, 1917, Nolan conveyed Lots 7 and 8, in Block 6, in Nolan's addition to James Duncan. Together they made one lot 70 feet wide and it was thereafter regarded as one parcel. Duncan's widow testified that as she had helped to pay for the property, he gave her the part in controversy and she fenced it off. They built a three room house on this part. No deed was executed to the wife, but this accounts for the small triangle being cut off from the lot. This house was rented to Harriet Welch for several years and then sold to her. Duncan and wife conveyed it to Harriet Welch by deed dated April 25, 1932. She did not have her deed recorded until December 18, 1935. At some indefinite time she moved out

and rented the place to her brother, who occupied the little house. She sold it on May 17, 1946, to the church. It began to use the building for religious services. The defendants ran the church people out and began to tear down the building.

The defendants' proof of title is this: James Duncan and wife conveyed all of lots 7 and 8 to David Fox on January 12, 1934. This conveyance is proved only by verbal testimony and a reference in the succeeding deed. It is to be noted that at that time Harriet Welch had an unrecorded deed to the property and was in the actual possession by virtue of it. Fox testified that he knew the colored people were living in a "little shack" on the lot, but he never said anything to them about owning it. The evidence is undisputed that Harriet's neighbors, including Duncan, and any passer-by, could see that she was living there. Fox kept it six days and then deeded the entire lot to Cora Turner on January 18, 1934. She deeded it to Emily Bledsoe on May 20, 1941. At that time Harriet's deed had been on record 5½ years. Emily Bledsoe deeded the lot to Ance Mc-Cully on January 19, 1941. He lived in the larger house, next door to Harriet Welch, both before and after he received the deed. He never said anything to Harriet Welch about his deed covering the triangle lot. On May 10, 1943, McCully deeded the property to Charley and Minnie Bryant, appellees herein, and they moved there. On June 14, 1946, one week after the church's deed was recorded, they conveyed the property to their daughter, Rosebud Napier. Two weeks later, on July 1, 1946, Rosebud deeded it back to Minnie Bryant. In none of these deeds was there any exception or reference to the small triangle lot.

When James Duncan conveyed the entire lot to Fox he knew, of course, about his former deed to Harriet Welch and knew that she was in possession by virtue of that deed. Every grantor and grantee thereafter, down to and including the appellee, Minnie Bryant, well knew that Harriet Welch or her tenant lived in the house with a fence or a part of a fence around it.

From a very early date this state has had a statute condemning champertous conveyances. The present statute (the same as the statute when all of these con-

veyances prior to 1942 were made, though expressed more clearly) declares, in part, that: "Any sale or conveyance, including those made under execution, of any land, or the pretended right or title thereto, of which any other person has adverse possession at the time of the sale or conveyance, is void." KRS 372.070.

The statement of the trial court to the jury in directing a verdict for the defendants was that Harriet Welch did not have her deed recorded when Duncan conveyed the entire lot to Fox, and the plaintiff had not proved fifteen years of adverse possession; therefore, the defendants had established an older title.

We do not think that that omission has anything to do with the question of champerty. Failure to record a deed does not diminish its value as color of title or destroy the title which it conveys. Champerty arises from adverse possession and does not require a title of record. Krauth v. Hahn, 139 Ky. 607, 65 S. W. 18, 23 Ky. Law Rep. 1261; Blalock v. Darnell, 191 Ky. 258, 229 S. W. 1039; Begley v. Erasmie, 205 Ky. 240, 265 S. W. 833. That character of possession need not have continued for fifteen years in order for it to be a shield of defense. Logan v. Phenix, Ky., 66 S. W. 1042; Cherry Bros. v. Tenn. Central Ry. Company, 222 Ky. 79, 299 S. W. 1099; Fordson Coal Company v. Collins, 268 Ky. 331, 104 S. W. 2d 985.

The possession of Harriet Welch, the grantee, was certainly adverse to Duncan, her grantor. Ring v. Gray, 6 B. Mon. 368, 45 Ky. 368. Obviously, that made Duncan's deed void under the statute. At all times Harriet's occupancy and possession was open and notorious. It was seen by all the subsequent grantees before they ever accepted their deeds. As present counsel for appellants say, "What a man sees, he knows."

In so far as Harriet Welch and her grantee, the appellant church, are concerned, all of these conveyances are champertous and void. Saylor v. Taylor, 148 Ky. 627, 147 S. W. 380; Anderson v. Daugherty, 182 Ky. 800, 207 S. W. 474; Moren v. Houston, 222 Ky. 785, 2 S. W. 2d 667; Smith v. Bryant, 260 Ky. 820, 86 S. W. 2d 1022.

We think the court gave the peremptory instruction for the wrong party. It should have directed a

verdict for the plaintiff in so far as its title and right of possession are concerned, and have submitted to the jury the question of damages which it sustained by reason of the defendants' intrusion and trespass.

The judgment is reversed.