Judge Ewing
delivered the Opinion of the Court;
This case was formerly before this Court, and its history will be found, in 2 Dana's Rep. 25;
Upon.the return of the cause to the Circuit Court, the lessors of the plaintiff introduced evidence tending to show, that Conley, Cook, Steen and McQueen, under executory contracts with Hays, in 1793, and Bridges, *480 uildef like executory contract in 1794, entered undé? Hays’ titles, claiming separate parcels of said land. And that they, and others claiming under them, held the possession, of different parcels of the land in contest, for more than twenty years, without interruption.
ínsttuctionss
The defendants attempted to countervail the said tesJ timony, and to show, that Hardage Smith, under whom they blaimed, had obtained a judgment of eviction iigainst Conley’s heirs, in a suit commenced before the twenty years had run in his favor, for the land, or a part of it, in contest, whereby they were absolved from their allegiance to Hays’ title. And also, gave testimony tending to show, that Hays was not in [possession of said land at the time said contracts of sale were execm ted, and possession taken under them, nor had been prior thereto.
Among other instructions, which it will be hnneces; sary to notice, the plaintiff’s counsel moved the following, which were refused by the Court:—
“ If the jury believe that the persons who purchased “ from William Hays took possession of the portions “ of land purchased by them, respectively, with the as- “ sent of Hays, that said possession, sd taken under “ Hays, enured ■ to his benefit, and the benefit of his “ heirs, so long as said possession was held under said “ Hays’ claim.”
“ That, if they believed from the evidence, that WTil* “ liam Hays and those holding under him, have held the “ land in contest, or any part thereof, under contracts “ of purchase with Hays, for twenty years before the “ commencement of the action of ejectment by Har* “ dage Smith v. Conley, that sudh possession enured to “ the benefit of Hays’ Heirs, and gave them a sufficient “ right of entry to enable them to recover so much as “ had been so held.”
And, at the instance of the defendant’s counsel, gave the following instructions among others:—
(1.) “That if they believe, from the testimony, that the “ possession of Conley, McQueen and Steen, was taken “ under contracts of purchase with Hays, before the “ year 1798, said contracts were illegal, void and of no *481 3* effect, unless the said Hays was at the time in posses-44 sion of the land sold to them. And that any posses-44 sion taken by them under such void contract, did not 44 enure to said Hays, or his heirs, or give him or them 44 the right of entry in the land in contesW-though such 44 purchasers and their vendees may have had twenty 44 years peaceable, uninterrupted, possession of the land •“ in contest—so as to authorize said Blayg or his heirs 44 to maintain the action of ejectment for said land, as 44 it would evade and defeat the laws against champerty.”
Questio ns for.€§-ciaio.n here,
(2.) 44If the jury belie.ve, from the evidence, that the & defendants, or those under whom they claim, had the 44 actual occupancy of the land in contest for seven .years 44 next before the commencement of. this suit, under .& •“ connected adverse title, in law or -equity, d.educible 44 of record from the Commonwealth, then and in that •t4 case, they should find for the defendants,”
(3.) “That if they believe that the vendors, the Heirs ¿4 of William Hays, had not the possession of the land ■t4 in contest at the time they conveyed it to Chiles, such 44 conveyance is void, and of no effect in law.”
Out of the instructions given and refused, several questions ..arise r-
First. Were sales, or contracts of sale, of entries ,or inchoate rights, derived under the laws -of Virginia, made prior to 1798, void by the statutes of champerty?
Secondly, If .such contracts were void, did the possession taken under them, by the purchasers, enure to the benefit of the vendor?
Thirdly. After 1798, was the sale aijd conveyance of land, the title to which originated under $he land laws •of Virginia, but was perfected by the grant of the Com* mon wealth .of If entucky, when a third person was in the .adverse possession of the land, charop.erto.us and void?
And, fourthly—--does an uninterrupted possession fop twenty years, before suit brought, confer upon the possessor, or those under whom he holds the possession, a right of entry and of action against one who has after? wards obtained the possession, ancj relies upon ap elder ¡outstanding patent?
The champerty act ofVirginia of 1786 was intended to apply to such titles only (the court incline to think,') as were consummated at the time of the convey-mice, or bargaining to convey.— For entries and inchoate titles were «assignable by express statute. But—
If a purchase of inconsequence of the Va. chert)still Jraa purchaser Who had entered under an executory contract and under the authority ot the vendor, (and derSsuoh purchaser) would be tl1o°vendor’s™tie—their possession---whether the contract was valid or void— would enure to his benefit and be, in effect, his possession.
*482 in 1786, the following statute was passed by the Le^ gislature of Virginia (1 Slat. Law, 284.)
“ No person shall convey or take, or bargain to convey a or take,-any pretenced title to any lands or tenements, “ unless the person conveying or bargaining to convey, or “ those under whom he claims, shall have been in the M possession of the same, or of the reversion or remain- “ der thereof, one whole year next before,” &c.
From the language of this section, we are inclined to the opinion, that the Legislature, in its enactment, had in contemplation, cases only where the titles were consummated, at the time of the conveyance, or bargaining to convey. Conveyances could only operate technically upon such titles. And such titles only could enable the purchaser legally and successfully to disturb the possession-of the occupant. And the'disturbance of his possession,by a litigious adversary, was certainly the main evil intended to be guarded against.
As evidence of tills view, it will be perceived, that there was a statute of said state, which authorized the assignment of entries and inchoate titles, without restriction as to the possession. 1 Litt. Laws of Ky. 415. And such assignments are clearly not within the provisions of the above section. 4 Bibb, 546, Oldham v. Rowan.
if an assignment is not, we cannot conceive that a deed purporting to be a conveyance, operating upon such titles, (which in substance can amount only to an assignment,) or a contract to convey, will fall under the denunciation of said section. The form of the contract can, surely, make no difference.
'¿ut, secondly, if it be conceded, that such contracts were within the provisions of the statute, and void, we cannot doubt that a possession taken under them by the purchaser, when executory, by the authority and assent of tjle vonc|or aod under his title, so long as the same is , ... , , held by him, or those claiming under him, will enure to benefit of the vendor. If the contract was void, the . ■ possession was still derived from him, by his assent and under his title, and it is the taking possession under anoiher that fixes the relation between them, and estops the possessor, and those who may come in under him from *483 contesting the title of him from whom he derived the possession. And the relation exists, and the estoppel should operate, when the possession is obtained under an executory contract, whether the contract is legal or illegal, valid or invalid. If the contract is a nullity, the possessor holds as tenant at will to the person from whom he derived the possession, and the relation still exists, and the estoppel works.
All titles to land which originated under the laws of Va. tho’ perfected underthelaws of Ken. are within the saving.? of the act oP98. In such cases, the purchaser is exempt from the champerty acts, may recover the land,though there was an adverse possession at the time of his purchase.
Twenty years un interrupted possession, not only tolls the right of entry of all adversary claimants, who are under no disability, but gives a right of re-entry to the party who had such-possession and those claiming under him, when' ousted. Such, right of entry* must prevail in eject, altho’ the'* def’t. may rely, upon an elder tk tie*
If the law has been violated, both parties are equally particeps criminis, and each should be placed in statu quo.
The vender could not treat the possessor as a trespasser; for he entered by his assent, neither can the possessor treat his possession thus acquired, as adverse and hostile, but amicable and consistent with the title of the vendor and held under it.
Thirdly. Wo are equally clear, that all titles to land deriving their origin under the land laws of Virginia, though the titles have been perfected, under the laws of Kentucky, are within the saving provisions of the statute of 1798. And that in all such cases, the purchaser is not only exonerated from the penalties denounced by the statutes of champerty, but has the complete title .and full remedy upon it in his own name, though there was an adversary possession at the time of the purchase. 2 Litt. Rep. 393-4, Albridge v. Kincaid.
Fourthly. It is also well settled, that twenty years uninterrupted, adverse possession of land, not only tolls any right of entry, which others laboring under no disability, may have had in the land, while it was so possessed, but that it tilso confers upon the possessor, as well as all those .to whose use his possession enures, a perfect right of entry, and consequently right of action to recover the possession in case he has been ousted from it. The right of entry has been destroyed in the outstanding title, and is conferred upon, and enures to the benefit of, the possessor. And as the right of entry and of possession are alone triable in the action of ejectment, the possessor, for twenty years clearly made out, must prevail. 3 Marshall, 30, Roberts et als. v. Sanders.
It will be perceived by the settlement of the above principles, that the Circuit Court erred in refusing to *484 giye the instructions asked by the counsel for the plain? tiffs, and in giving those that were given, at the instance' of the counsel for the defendants.
Occupancy of dence™uporTu; are not synonijnous terms.: It is the latter only' that makes the Seven years la.w available.'
A party cannot set up a title adverse to that un-' Her which he acquired the possession; nor can Inte himaimi"S:
There was some contrariety in the testimony, in relation to the time as well as extent of the possessions held uiider Mays’ title; And it is not our province to determine upori its sufficiency, or the extent of the possession established by it, further, than that its tendency was to prove the grounds relied on by the plaintiff. It wag therefore proper to give the instructions asked by the plaintiff, and to withhold those given, at the instance of the defendants, leaving the jury to settle and determine the, facts.
it might also have been 'misleading to give the second instruction, given at the instance of the defendant. Seven years occupancy will not bar, but seven years . J •, .. residence on the land only-. An' occupancy may exist -vvithout a residence.
. ; We. cannot perceive the relevancy of the deed xrorn the Marshal to Conley. If he obtained the possession , TT , ' ‘ ' , , . : TT ,- under Hays* he was estopped to set it up against Hays’ title, or under it, to hold the possession adverse to Hays, ’ 1 . J And we conceive, that if he could not use it, neither cap ^ie defendants claiming under him.
Other questions of minor import were made, but we. will pass by them, believing that the above principles will furnishV’suffi.cient guide to the Circuit Court, to diy rect him in the further progress of this case.
It is, therefore, ¿the opinion of this. Court,"that the judgment of the Circuit Court be reversed, and the cause remanded-, that a new trial may be granted;