## Padgett v. Decker.

(Decided November 2, 1911.)

### Appeal from Henderson Circuit Court.

1. Land—Sale—Parol Contract—Vendor and Vendee—Possession.— The vendee in a parol contract for the sale of land holds under his vendor. His possession is not adverse unless he in fact holds adversely and in such a manner as to apprise a person of ordinary prudence that he is holding the land adversely and not under his vendor.

2. Vendee in Possession—Lien for Purchase Money—Rent.—When the vendor does not comply with the oral contract the vendee in possession is entitled to a lien on the land for the purchase money with interest, and should be charged with rent on the land con-

sidered without reference to his improvements, from the time that the parol contract was disaffirmed by the vendor, and possession of the land was demanded.

VANCE & HEILBRONNER, W. P. McCLAIN for appellant.

MORRIS & HART for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

G. W. Padgett brought this suit against James Decker to recover possession of a tract of 15 acres of land which he alleged he owned and the defendant held without right. Decker by his answer denied that Padgett owned the land, and alleged that for more than 15 years prior to the institution of the suit, he had been in adverse possession of it. The case came on for trial before a jury. The proof for the plaintiff was in substance this: Padgett is 82 years old; he owns a tract of land on which he resides containing something over 200 acres. The 15 acres in controversy is a part of this tract. Decker has worked for him for a number of years and married his stepdaughter. In 1895 Padgett made a verbal contract with his step-daughter, the wife of Decker, by which she purchased of him the 15 acre tract for $300; and by the terms of their agreement she was to pay him the sum of $100 a year, and when the purchase money was paid, he was to execute to her and her children a deed for the land. No writing of any kind was made. Padgett placed her in possession of the land. Decker built upon the land a two-room box house and a barn, and planted an orchard on it. She died in the year 1899, no part of the purchase money having been paid. After her death Padgett made an arrangement with Decker by which Decker was to work the land upon shares, he and Decker each to receive one-half the crops raised on it. This arrangement continued up to and including the year 1908. In 1909 and 1910, Padgett rented the 15 acres to a man named Young over Decker's protest. Young cultivated the land for the years 1909 and 1910, paying Padgett the rent, Decker retaining possession of the house and living there. In 1911 Decker drove Young off and this suit followed.

On the other hand, the proof for the defendant is about this: Padgett told Decker about the arrangement he had made with his wife and stated to him that they were to have the land at $20 an acre. He and Padgett

marked off the boundaries, and Padgett then said to him, "Jim, that is your land," but did not give either him or his wife any deed or any writing for it. After the death of Decker's wife in 1899, something having been said about his not having a deed to the land, he mentioned it to Padgett and Padgett said: "Never mind, don't say anything about it, it doesn't matter, I will fix that. I will make a deed." The purchase of the land was made in 1893. The box house was worth $500, the barn $400, the orchard $300, other improvements $100. Decker did not rent the land at any time from Padgett during the years 1901 to 1908, but Padgett furnished him the grass seed for the 15 acres and he gave him one-half of the grass growing upon it for the five years which the land bore grass from that seed, and during that time he helped work Padgett's other lands, and Padgett fed his teams which he used in working Padgett's other land. He hauled logs to Bluff City for Padgett and hauled lumber and shingles for him, amounting to $175, which went on the land. He also hauled goods to his store for which hauling he charged him at the rate of $1.50 a month, and in this way he had paid the remainder of the purchase money for the land.

There was proof on behalf of the plaintiff to the effect that Decker had declared that he rented the land from Padgett, and there was proof for the defendant to the effect that Padgett had said that Decker had paid for the land and it was his. There was some conflict in the evidence as to the date of the parol sale of the land; but the weight of the evidence was that it was made in the year 1893. The action was brought on January 2, 1911. On this evidence the court refused to instruct the jury peremptorily to find for Padgett and instructed them in substance that they should find for Decker if he had held the land in adverse possession fifteen years; but that they should find for Padgett if Decker abandoned the contract of purchase and held the land as the tenant of Padgett. The jury found for Decker; Padgett appeals.

The instructions were erroneous. In Sprigg v. Albin, 6 J. J. M., 163, the court thus stated the rule as to the possession of a vendee under an executory contract of purchase:

"No length of possession will invest a tenant or quasi tenant with the title of his landlord. Starkie says, 'Notwithstanding a continuance of possession far exceeding twenty years, if the original possession can be accounted

for consistently with a title existing in another, it will be competent to the latter to rebut the presumption arising from the continuance of the possession;' III Vol. 1217. Now, if it be conceded that the appellees and their ancestors together, have had twenty years possession complete; yet the facts prove beyond doubt, that the original entry was made under an executory contract, that the appellees looked to Chenoweth for a title, and that he looked to Sprigg, and that they held as quasi tenants under the title of Sprigg. Here then is a friendly possession commenced and continued 'consistently with the title' of Sprigg. Consequently the presumption arising from twenty years possession is rebutted, and, as that possession was not adverse, it does not confer title of itself, or toll the appellant's rights of entry.''

This case followed Moore v. Farrow, 3 A. K. M., 48, Riley v. Milton, 4 J. J. M., 396, Butts v. Chinn, 4 J. J. M., 641, and in these cases other previous decisions are referred to. In Moore v. Webb, 2 B. Mon., 282, where a father had given a tract of land to a child, the court sustaining the defense of adverse possession, said:

''But even if the jury had been bound to consider the original contract as in effect executory and the entry of the defendant as in the legal character of a tenant at will, still she might have held adversely, in fact; and if she did so hold for twenty years with the knowledge of the plaintiff, and those under whom she claims the statute of limitations barred the plaintiff's right of entry. And, as already intimated, we are of the opinion that, however the probabilities may preponderate, the jury had a right to infer that the defendant's possession had been, in fact adverse for at least twenty years preceding the institution of this suit, and with the knowledge, all the time, of all parties concerned in the fact.''

This rule has been followed in a number of subsequent cases. See Commonwealth v. Gibson, 85 Ky., 666; Creech v. Abner, 106 Ky., 239; New Domain Oil Co. v. Gaffney Oil Co., 134 Ky., 792, and cases cited. In the last case we said:

''Where a grantor under an executory contract for the sale of land looks to his grantor for title, it is generally held that he cannot at the same time claim that his possession was so adverse to his grantor as to defeat the latter's lien for unpaid purchase money. But where the vendee has paid for the land, and owes nothing to his vendor, his possession is hostile to any claim of superior

title or right by the latter, and although a deed is not executory his vendee could use his possession, after the statutory period, to defeat the claim of his vendor or any one else to right of possession because the paper title was vested in them. If the possession is hostile to any claim of right by the former owner, it is adverse to it, and sets the statute running, although the person in possession may be looking to the former owner for the conveyance.''

Where a possession is in its origin amicable, it will not become adverse so as to set the statute of limitation in motion unless the property is in fact held adversely and in such a manner as to apprise a person of ordinary prudence that the holding is adverse. (Gossom v. Donaldson, 18 B. Mon., 241; Russell v. Marks, 3 Met., 45; Ross v. Veech, 22 R., 578.)

Under Decker's own evidence he did not finish paying for the land until after his wife died. There is nothing in the evidence to show that during her lifetime there was any adverse holding of the property. On the contrary, it is apparent from his own testimony that he was looking to Padgett for title after she died. After she died there was no act on the part of Decker previous to the year 1911 that would apprise Padgett as a man of ordinary prudence that Decker was holding the land adversely to him. Decker had paid Padgett one-half of the crops on the land year by year for a number of years, this being the way that Padgett was renting out his other land. He allowed Padgett to put Young in possession of the land in 1909, and allowed Young to hold it for the years 1909 and 1910. Though he protested he took no steps to prevent it, and allowed Padgett to receive the rent. Unquestionably his holding at the outset was amicable, and there was nothing in his conduct from the beginning to the time that Young went out, to apprise Padgett as a man of ordinary prudence that Decker was claiming the land in any other way than as his vendee, or that his possession was in any sense adverse to him. We think it is reasonably apparent from the whole record that Decker's present claim first occurred to him after the lapse of fifteen years from the time he entered; for we cannot otherwise account for his allowing Padgett to receive one-half of the crops on the land for so many years.

Under the evidence the court should have instructed the jury peremptorily to find that Decker did not hold the land adversely to Padgett, and upon the return of the verdict he should have entered an order transferring the

case to the equity docket to ascertain what Decker had paid upon the land, and how much his improvements enhanced its vendible value. The parol contract being void cannot be enforced but Padgett cannot keep the money which he received and Decker is entitled to a lien on the land, both for the money which he paid and the enhancement of the value of the property by reason of the improvements which he erected on it while in possession as vendee under the expectation that Padgett would carry out the contract. He should not be charged with rent on his improvements, but should be charged with rent since the year 1910 on the property considered without reference to his improvements. He should also be allowed interest on his purchase money from that time. No charge should be made for rent and no interest should be allowed on the purchase money previous to the year 1911.

Judgment reversed and cause remanded for further proceedings consistent herewith.