## Chesapeake & Ohio Railway Company v. Rosskamp.

(Decided February 8, 1918).

### Appeal from Campbell Circuit Court.

1. Adverse Possession—Claim of Ownership or Title.—Claim of ownership or title is essential to the acquisition of title by adverse possession.

2. Adverse Possession—Limitation of Actions.—Where possession of land is in its origin amicable, it will not become adverse so as to set the statute of limitations in motion, unless the property is in fact held adversely and in such a manner as to apprise a person of ordinary prudence that the holding is adverse.

3. Adverse Possession—Payment of Taxes Upon Land.—The payment of taxes upon land is only a small circumstance tending to show a claim of ownership and is not at all sufficient to establish an adverse holding within the meaning of the law.

4. Escheat—Right to Rests in State.—The right to an escheat is one which rests in the state alone; in a suit between individuals neither party will be permitted to set up the liability of property to escheat.

5. Adverse Possession—Fences—Enclosure.—The building of a fence upon one side of a tract of land is not an enclosure of land that would indicate possession or ownership.

WM. A. BURKAMP for appellant.

BARBOUR & BASSMAN for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

In this action in ejectment by the appellant, the Chesapeake & Ohio Railway Company, against Mrs. Anna Rosskamp to recover from her portions of town lots 284, 285, 286, 287 and 288, of Williamson's Addition to the town of Bellevue, there was a verdict and judgment for the defendant. The railway company appeals and insists, among other grounds for a reversal, that its motion for

a peremptory instruction for the jury to find for it should have been sustained; and, as that question, in our opinion, is decisive of the case, we will confine this opinion to its discussion.

The answer traversed the company's allegations of ownership, and alleged ownership in Mrs. Rosskamp, without averring the character of her ownership.

The land in dispute, which amounts to an acre and one-half, is in the block bounded by the Covert Run turnpike on the south, Taylor avenue on the east, Grand View avenue on the north, and La Fayette avenue on the west. Appellant's railroad track runs northeastwardly through the block at an elevation of 35 feet above the land in dispute, which lies immediately west of the railroad track. When this portion of the track was built in 1886, Catherine Faehrs and Henry, her husband, owned lot 287 fronting about fifty feet upon the Covert Run turnpike, upon which there was located a two-room cottage, in which they lived. The Contracting & Building Company constructed this section of the railroad now owned by the appellant. On December 15th, 1886, the Faehrs sold lot 287 to the Contracting & Building Company for $1,850.00; and, about that time the Contracting & Building Company acquired title to the entire block, including the land in question. By subsequent conveyances the appellant railway company acquired title to all of the property in question, and now has a complete paper title thereto.

Shortly after the Faehrs sold lot 287 to the Contracting & Building Company, and while they were still living in the cottage located upon that lot, they invited Mrs. Rosskamp, who had been driven from her house in Cincinnati by high water, to occupy the cottage jointly with them for a few weeks. The invitation was accepted; Mrs. Rosskamp and her family moved into the cottage in February 1887; and, a few weeks thereafter the Faehrs moved out, leaving Mrs. Rosskamp and her family, including her husband, in possession. Mrs. Rosskamp's husband obtained employment with the Contracting & Building Company, and after the road was completed he worked for the company as a section foreman until 1892. In 1893, however, he went to Germany and has never returned. Grand View avenue was constructed along the northern side of this block in 1902 at a cost, to this block, of $2,439.42, which the appellant paid.

Mrs. Rosskamp remained in possession of the cottage on lot 287 and a small garden adjoining it, from February 1887, without being disturbed by any one, until early in 1913, when Costello, the agent for the appellant company, having discovered that the title to the land was in the appellant, demanded a lease from Mrs. Rosskamp, which she refused to give. Shortly thereafter the city began to use that portion of the land fronting upon Grand View avenue as a garbage dumping ground; and, to prevent this use Mrs. Rosskamp enclosed the land in question with a wire fence in the summer of 1913.

On November 16, 1914, Mrs. Rosskamp executed a general warranty deed for the land in question to her daughter, Anna Rosskamp, for the recited consideration of one dollar; and, at the same time Anna reconveyed the land to her mother. The deeds were put to record. In about 1889 Mrs. Rosskamp constructed a fence along that portion of the property which lies next to the railroad track; but there was no other fence built upon the property until it was enclosed in the summer of 1913, as above indicated.

In giving her testimony Mrs. Rosskamp first claimed that she had bought the property from Mr. Huntington who was then dead; but she was unable to produce any deed therefor from any one. Costello testified that when he called upon Mrs. Rosskamp in 1913, she said she had bought the house and leased the ground from the railway company's agent; but she could not give the agent's name and never paid any rent to any one. She further said she had paid taxes upon the house for nine years, beginning in 1908, a statement which proved to be true.

Eubank, the assistant engineer of the appellant company, visited Mrs. Rosskamp in October, 1913, and talked with her about her possession. She did not claim to own the land, but said her husband had been given permission to live there by the railroad superintendent or foreman. Mrs. Rosskamp contradicts both Costello and Eubank.

It is apparent that during the trial Mrs. Rosskamp abandoned all claim to a paper title and relied solely upon a title by adverse possession; and, the case was submitted to the jury upon that issue alone.

1. The rule is well established that claim of ownership or title is essential to the acquisition of title by adverse possession. 2 C. J. 126. The reason for the rule

is, that possesion, *per se*, evidences no more than the mere fact of present occupation by right, for the law will not presume a wrong; and a rightful possession is just as consistent with a present interest under a lease for a term, as in fee. Ricard v. Williams, 7 Wheat 59.

It is quite significant, therefore, that nowhere in her testimony does Mrs. Rosskamp say she claimed to own the land in question at any time before her conversation with Costello in 1913; she merely says that she had lived there since 1887. When asked by her counsel if she had claimed the land as her own, the trial court sustained an objection to the question, and no avowal was made as to what her answer would be if she had been permitted to answer.

The only witness introduced to corroborate Mrs. Rosskamp is her neighbor, Mrs. Moreland, whose testimony is too indefinite to carry any weight. So, there was really no proof to sustain the claim of adverse possession before the building of the fence in the summer of 1913, which was followed by the recording of the deeds between Mrs. Rosskamp and her daughter in November, 1914. These two acts constituted the first acts of hostility upon the part of Mrs. Rosskamp; and her statement to Costello, which, according to her testimony, was hostile, was made about the same time.

Furthermore, giving Mrs. Rosskamp's testimony its full value, it appears that her entry was amicable, and not hostile. She admits that fact, saying that she knew the land had been sold by the Faehrs to the Contracting & Building Company, and that she moved there at the invitation of the Faehrs in 1887 on account of the high-water. There is no testimony that she at any time, between 1887 and 1913, claimed to be the owner of the land; on the contrary her own testimony shows her entry was amicable and not hostile.

2. It is a well settled rule of law that where the possession is in its origin amicable, it will not become adverse so as to set the statute of limitations in motion, unless the property is in fact held adversely and in such a manner as to apprise a person of ordinary prudence that the holding is adverse. Gossom v. Donaldson, 18 B. M. 241; Padgett v. Decker, 145 Ky. 227; Cryer v. McGuire, 148 Ky. 100, Ann. Cas. 1913E., 485; Frazier v. Morris, 161 Ky. 76. Briefly put, to make a holding hostile the claimant must hoist his flag and keep it flying.

In 2 C. J. 131, it is said:

"A possession by permission or license from the owner is not adverse and cannot ripen into title, no matter how long continued or how exclusive it may be. The possession of the occupant under such circumstances is considered the possession of him upon whose pleasure it continues." See also Miller v. Shackelford, 4 Dana. 264; Chiles v. Jones, 4 Dana 479; Shackelford v. Smith, 5 Dana 232; Bruce v. Taylor, 2 J. J. M. 160; Hall v. McLeod, 2 Met. 98.

Mere unexpressed intention upon the part of Mrs. Rosskamp to hold adversely could not set the statute in motion, nor could it be set in motion by such slight repairs as she may have made from time to time for her own convenience and comfort.

In 2 C. J. 134, it is further said:

"The statute of limitations does not begin to run until the true owner has actual notice of a hostile holding against him, or until there are acts or declarations on the part of the claimant showing the possession to have become hostile, done and made in such manner and under such circumstances as to leave no doubt that they came to the knowledge of the owner or some one representing him. It must be shown that the true owner had knowledge of the adverse holding, or it must be so open and notorious as to raise a presumption of notice to him equivalent to actual notice."

3. The payment of the taxes upon the improvements by Mrs. Rosskamp for several years beginning with 1908, is at most, only a small circumstance tending to show her ownership of the improvements, and no evidence of her ownership of the land. 2 C. J. 69; Overton v. Overton, 123 Ky. 329.

4. By an amended answer, Mrs. Rosskamp alleged that the appellant railroad company had acquired title to the lots in dispute, if it had any title, more than five years before the institution of this action; that at no time had it been used by appellant in connection with its railroad business, nor had it been necessary or proper for the carrying on of the appellant's railroad business; and for that reason the appellant was estopped from claiming possession of its land. The trial court rejected the amended answer upon the ground that it did not present a defense. It is claimed this was error; and as it

may be renewed upon a subsequent trial, the propriety of the ruling will be briefly considered.

This defense was offered by reason of section 567 of the Kentucky Statutes which prohibits a corporation from holding any real estate, except such as may be necessary and proper for carrying on its legitimate business, for a longer period than five years under penalty of escheat. See also Ky. Const., sec. 192. But this question cannot be raised by Mrs. Rosskamp since it is elementary that only the Commonwealth can enforce the forfeiture. In 10 R. C. L. 612, the rule is stated as follows:

"The right to an escheat is one which rests in the state alone. The state may choose to enforce it, may release it altogether, or may lose it through neglect to proceed until the property has passed into other hands. Therefore, the state is a necessary party to an escheat proceeding; and in a suit between individuals neither the plaintiff nor the defendant will be permitted to set up the liability of property to escheat. On the question as to the right to hold real estate within the jurisdiction, it follows that the state alone can question the right of an alien or of a corporation." See Louisville School Board v. King, 127 Ky. 824, 15 L. R. A. (N. S.) 379.

5. The building of the single line of fence on the east side next to the railroad track did not set the statute in motion for two reasons; first, because the fence has been down for many years; and second, there never was any enclosure of the land, complete or otherwise, prior to the summer of 1913. Young v. Pace, 145 Ky. 405. It is apparent, therefore, that Mrs. Bosskamp's possession was without color of title and was that of a "squatter" only; that it was not hostile prior to 1913; and the appellant having shown a paper title to the land in question, its motion for a peremptory instruction for the jury to find for the plaintiff should have been sustained.

Judgment reversed and cause remanded for further proceedings consistent with this opinion.