## Stepp v. Stepp, et al.

(Decided October 26, 1926.)

Appeal from Martin Circuit Court.

1. Adverse Possession.—Where one claiming under color of title is in actual possession of part of land, law by construction carries possession to full extent of boundary except as against actual adverse possession or superior title, where entry and possession are not on interference.

2. Adverse Possession.—Actual adverse possession of part of land within well defined boundary under deed describing land claimed held to ripen into title as against claim under patent covering land, which was not vacant and unappropriated.

J. B. CLARK for appellant.

W. R. McCOY and A. COPLEY for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Reversing.

Appellant, J. M. Stepp, by his petition in equity herein, asserted his ownership and possession of a particular boundary of land containing 150 acres located on Wolf creek, in Martin county, Kentucky, and sought to quiet his title of the alleged spurious claims of his brother, W. B. Stepp. The brother answered and by way of counterclaim set up his ownership of a tract of land containnig 62 acres which in part lies within the boundary claimed by appellant, and sought to quiet his title thereof. During the pendency of the action, W. B. Stepp died, and it was revived in the name of the appellees, his widow and heirs. Upon the trial below the chancellor dismissed appellant's petition, and on the counterclaim of the appellees adjudged that they were the owners of the 62 acre tract of land, and quieted their title. The appeal is prosecuted from that judgment.

Consideration of the record has led to the conclusion that appellant failed to establish his ownership of the tract of land described in his petition by title of record deducible from a grant by the Commonwealth. Whether he established title by possession presents a more difficult question. The tract of land described in the petition was conveyed to appellant on the 21st day of February, 1899, and more than 15 years before the institution

of this action. We have no difficulty in concluding that the description contained in the deed constitutes a well defined boundary so as to give notice of the extent of appellant's claim to ownership under it, because as described the boundary begins at a designated tree and large rock in the bottom below where Little Crooked branch empties into Wolf creek. It runs thence to a designated tree, a corner of Gabriel Federick's line, standing in the center of the dividing ridge between Little Crooked branch and Rock branch, passing a designated tree as a corner before reaching that point. The line thence runs with the center of the dividing ridge between those two branches to the dividing ridge between Little Rockcastle creek and Big Crooked branch; and with the center of that dividing ridge to the dividing ridge between Big Crooked branch and Little Crooked branch; thence with the dividing ridge between the last two named branches to a large cliff at the end of that ridge overlooking Wolf creek; thence to a designated tree and stone on Wolf creek; thence down that creeek with its meanders to a point opposite the beginning corner, and thence to the beginning.

As was said by the court in Ramsey v. Hughes, 212 Ky. 715:

"The rule is that where one claims under color of title and is in actual possession of a part of the land within his well defined boundary, the law by construction, carries his possession to the full extent of his boundary, except that as against actual adverse possession this rule will not prevail, and except that as against superior title this rule will not prevail unless the entry and possession be upon the interference."

The cases supporting the rule are cited in the Ramsey opinion. Appellant's deed, which he immediately recorded, unquestionably was color of title sufficient to invoke in his behalf the rule above, and as we have seen the boundary conveyed by it was a well defined boundary within the meaning of that rule. The first question to be determined then is whether or not appellant took actual possession of a part of the land within his well defined boundary after it was conveyed to him and held the same continuously and adversely for a sufficient

period of time to ripen his possession into title. The court is at a loss to understand why counsel for appellant did not develop this feature of the case so that the question could be determined beyond controversy. We infer from reading this record that since obtaining his deed appellant has lived in a residence located within the boundary above described, and yet that fact is not explicitly proved herein. We infer from reading the record that tillable land on Wolf creek and Little Crooked branch within the boundary has been inclosed and cultivated by appellant from year to year since he obtained his deed, and yet that fact is not explicitly shown by the evidence herein. The deed to appellant, dated and recorded February 21, 1899, was introduced in evidence. Appellant on direct examination testified: "Q. How long have you owned tract No. 2 (that described in his petition), if you know? A. Since February 21, 1899. Q. Have you been in the actual and continuous possession of this tract of land since February 21, 1899? A. Yes, sir." The question was leading and the answer elicited necessarily was a conclusion. However, no objection or exception was made or taken upon either ground, and that testimony stands in the record unchallenged. On cross-examination appellant was asked and answered: "Q. Have you ever lived on the inside of the lap or interference between the lands claimed by you and the lands claimed by W. B. Stepp? A. No, sir. I have never lived on the inside of that. Q. Has any one lived on the inside of that lap or interference? A. No, sir, not that I know of." And further: "Q. W. B. Stepp, defendant in this action, lived on the adjoining farm to yours for a number of years, didn't he? A. Yes, sir. Q He lived on the farm at the mouth of Big Crooked before you lived at the mouth of Little Crooked, didn't he? A. Yes, sir. Q. Do you know how many years it has been since he settled there on Big Crooked? A. No, sir. Q. Your deed boundary covers the land in dispute, does it not? A. Yes, sir. Q. And you have been in possession of that boundary ever since the date of the deed, 1899? A. Yes, sir." The only reasonable inference from the first question and answer as cross-examination of appellant's unchallenged testimony that he had been in continuous, actual possession of his deeded boundary is that while he had not lived upon the lap of the two disputed tracts he had lived upon his own boundary outside

the lap. The other quoted portion of the cross-examination, when considered with the other facts in evidence, seems to establish that fact with certainty. It establishes that appellant lived at the mouth of Little Crooked branch. Little Crooked branch is shown by the testimony of the surveyors and the maps on file herein to empty into Wolf creek something near the center of the tract of land claimed by appellant as it runs with Wolf creek. The record establishes that the father of appellant, James M. Stepp, and of the original defendant, W. B. Stepp, owned a large tract of land which he subdivided and conveyed to his children. The tract claimed herein by appellant was conveyed to him by his father and was carved from the large boundary of land on which he had lived for many years. W. B. Stepp, the original defendant, acquired by deed from his father a tract of land adjoining that of appellant on Wolf creek. When they obtained their deeds W. B. Stepp appears to have made his home near the mouth of Big Crooked branch on the tract of land conveyed to him, and appellant, James M. Stepp, to have made his home near the mouth of Little Crooked branch, and, as we conclude from the testimony above, within the boundary of the tract of land conveyed to him. The controversy as between appellant and appellees as to the portion of appellant's deeded boundary claimed by appellees does not grow out of a dispute between them as to the location of the dividing line between the two tracts of land conveyed to them by their father. Appellees base their sole claim to title of the land in dispute upon a patent for 62 acres of land which issued to W. B. Stepp on April 10, 1904. Appellees contend that the land in dispute was vacant and unappropriated and that they obtained title by the grant above. The record herein establishes beyond controversy that the land covered by the 62 acre grant was not vacant and unappropriated land. On January 20, 1854, the Commonwealth issued two patents to one James Stepp for 200 acres each. In 1866 the Commonwealth issued to John Jones and S. K. Munsey a patent for 475 acres of land. The boundary of the Jones and Munsey survey begins at the beginning corner of one of the James Stepp 200 acre surveys on Wolf creek, runs thence, leaving the Stepp survey a circuitous route until it again strikes the James Stepp survey, and the last two lines of it run with the last two lines of the Stepp survey to the begin-

ning. All of the 62 acre grant under which appellees claim lies either within one of the James Stepp 200 acre surveys or within the Jones and Munsey survey. The record, therefore, clearly establishes that none of the land covered by the patent of 1904, under which appellees claim, was vacant and unappropriated land. The record establishes further beyond question that appellees and those claiming under the junior grant have never been in any character of possession of it, their sole claim to title being founded upon the validity of the patent of 1904. Thus it is manifest that as against appellees appellant's right to invoke the rule quoted above is not hampered either by adverse possession, for the record discloses that appellees have not been in adverse possession of their 62 acre grant, or by superior title, because the title under which they claim is shown beyond all question to be an invalid one. It follows, then, that since the evidence herein establishes that appellant has been in the actual possession of a part of the land within his well defined boundary by living upon it, the law by construction has carried his possession to the full extent of his boundary, because his deed containing a description of the land claimed by him under it so defined the boundary claimed as to give notice of the extent thereof. Having been in such actual possession for a period of more than fifteen years before he instituted this action, his possession had ripened into title. We are constrained to hold that the chancellor erred in adjudging that appellant's petition be dismissed and in adjudging that appellees are the owners of the 62 acre tract of land described in their counterclaim.

Judgment reversed and cause remanded for judgment in conformity herewith.