# United Hebrew Congregation of Newport v. Bolser et al.

(Decided May 20, 1932.)

JOHN WM. HEUVER and WILLIAM C. BUTEN for appellant.

DANIEL W. DAVIES for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

We will adopt for our statement of the case that made by appellant (appellees having filed no statement, and the facts involved in the statement, it appears, being practically agreed upon):

"This is a case of adverse possession. The appellant, United Hebrew Congregation (plaintiff below), filed a petition in equity to quiet title to its property. The petition described its property and the property of the appellees, Elmer Bolser and Gussie Bolser (defendants below); that both parties derived title from a common source, a particular description of that portion of appellant's land to which appellees were claiming title, and asked that its title be quieted.

"The appellees answered, admitting the correctness of the descriptions of the respective pieces of property, the derivation of title from the common source, and further pleaded as a defense that the appellees and their privies in title had been in actual, visible, notorious, peaceable, continuous, and adverse possession of said strip for fifteen years next prior to the institution of said action and were therefore entitled to same.

"The reply denied the allegations of adverse possession, and the case was transferred to the common-law docket to try said common-law issue of adverse possession.

"Upon a trial of said issue before a jury, a verdict was returned in favor of the defendants, and the court dismissed the petition of appellants and refused to grant a new trial, hence this appeal.

"The basis of this appeal and for reversal of the judgment below are set out in the plaintiff's motion and grounds for a new trial, which are as follows:

"(1) The court erred in admitting incompetent evidence offered by defendant, and to which the plaintiff at the time excepted.

"(2) Because the court erred in refusing to sustain the motion of the plaintiff, at the close of the defendant's testimony for a peremptory instruction that the jury find for plaintiff.

"(3) Because the court erred in refusing to sustain the motion of the plaintiff, made at the close

of all the testimony, that the court peremptorily instruct the jury to find for plaintiff.

"(4) Because the court erred in giving instructions marked 1 and 2.

"(5) Because the court erred in refusing to give the instruction offered by plaintiff, marked A.

"(6) Because the verdict is not sustained by sufficient evidence and is contrary to law.

"(7) Because the verdict appears to have been given under the influence of passion or prejudice.

"The pleadings set out particular descriptions of the respective properties of the parties and the derivation of title from a common source. The correctness of the descriptions of the respective properties of both parties, the strip of ground in controversy, the location of the boundary lines of the respective pieces, the correctness of the plats showing the respective lines and locations of buildings, and that appellants have the record title to the strip in controversy, are all admitted, so the only question remaining is: Whether the appellee had such adverse possession of the strip in dispute as would deprive appellant of title, and vest same in appellees?"

Two plats were introduced and used throughout the trial and referred to by all the witnesses, and their correctness admitted. These show the location of the parties' respective properties situated on the north side of Fifth street in Newport, Ky., the location of buildings on their respective lots, the division line between them, present fencing, and fencing at the time of purchase by appellant. These plats also show that appellant's lot has a frontal width of 50 feet on Fifth street, and extends in a strip of said width northwardly therefrom 100 feet, while the appellees own a 33-foot lot adjoining and west of it, extending northwardly from Fifth street for a depth of 107.30.

The pleadings and evidence show that the parcel of land in controversy herein is a small strip extending along the appellant's western division line of its property, and lying between that and the western wall of its church, and extending from Fifth street the width of 3.13 feet some 60 odd feet to a break in the west wall, and thence northwardly with an increased width of about 7 feet to its north property line.

This narrow strip of some 100 feet in length is thus particularly described in the petition as follows: Beginning at a point in the northerly line of Fifth street where the westerly line of plaintiff's premises intersect same, and being the dividing line between the premises of the plaintiff and the defendants herein; thence northwardly along said dividing line 100 feet to a point; thence at right angles eastwardly 6.9 feet to a point; thence at right angles southwardly 33.3 feet to a point; thence westwardly 3.77 feet to a point; thence southwardly at right angles 56 feet to a point; thence westwardly .13 feet to a point; thence at right angles southwardly 10.7 feet to the northerly line of Fifth street; thence westwardly 3 feet to the place of beginning.

Appellees, claiming the strip in question by adverse possession, assumed the burden of proof, and attempted to maintain it by the testimony of some four witnesses.

There is no conflict in the evidence that both appellant and appellees knew the location of their division property line and the respective widths of their adjoining lots located on Fifth street; that their boundary lines were notched upon the coping stone running in front of their lots, and also marked upon the curbing, and further that there was no fencing upon the division line between these two properties when appellees bought and entered upon their property in 1920.

Appellee Elmer Bolser states that, when he bought and entered upon the property in 1920, the division line was unfenced, but that a short iron fence extended from the front west corner of the church a distance of some 10 feet to the fence extending along the front line of the property.

Evans, from whom he bought the property, states that he purchased this 33-foot lot in 1910, when there was a short lattice fence on appellant's west division line, extending from the front line to a point opposite the west corner of the church, with which it was connected by a further short piece of lattice fencing some 3 feet in width to the southwest corner of the church, though he did not state at what time during his ten years' ownership of the property he removed this lattice fence from the property line or under what circumstances this new iron fence was constructed some 3 feet east of appellant's property line.

Appellee states that he used the strip in question in connection with his own land adjoining, and claimed same as his own, though he never notified appellant that he was adversely claiming the strip in question.

Mrs. Bolser testifies that she was several times called upon by committees of the appellant church to pay a small rental for the use they were making of this strip of appellant's land in recognition of their permissive use of same, but that she declined to pay anything therefor.

Appellant's testimony is that, before this property was acquired by either appellees or their grantor, Evans, appellant, after its purchase of the church property in 1904, had allowed the owners of the adjoining 33-foot lot to use the same in connection with their property, but received a small rental from the user therefor; that such plan was observed by them for the purpose of showing that the use of this strip in question by the adjoining owners was not adverse to appellant's ownership of it, but permissive or licensed by them; that, upon Evans acquiring the adjoining property in 1910 and continuing to make use of this narrow strip, he was asked by appellant's church committee to also pay the customary small rental for its use as a recognition of this permissive use being made thereof, but replied that there was no use to pay anything, as he was ready and willing to sell his adjoining property anyhow to appellant, but did not deny that his use of the strip was according to its customary licensed use as allowed by appellant.

It is shown that a survey was made of the lot when purchased and moved on by Evans, and that the boundary lines of his lot were well known to him, and that it was clearly recognized appellant was the record title owner of the strip in question.

No witness denies that the first use, prior to 1910 of this strip in question, by the occupant of the adjoining 33-foot lot, was permissive by the owners of the church property, and that a small rent was paid in recognition of such use of the strip as being licensed or permitted by the church. Neither is it denied that no notice was ever given the appellant by either of the two subsequent owners of the adjoining lot that they were no longer making a permissive use of the strip in question but were claiming the same adversely to appellant's right of ownership therein.

Appellant contends that, upon this evidence introduced upon the trial, it was entitled to a directed verdict.

We are of the opinion that this claim is meritorious, in that appellees' merely holding or making use of the strip in question, even if made with an intention to claim the disputed strip up to the west wall of the church, yet if held or occupied by it without giving notice to appellant, did not constitute an adverse holding as to it, which began as permissive.

In Spencer Christian Church's Trustees v. Thomas, 84 S. W. 750, 27 Ky. Law Rep. 250, the court said:

"It is obvious that two persons claiming against each other cannot at the same time be in the actual possession of the same premises, either in law or in fact. If both are present, claiming the title, the possession is his who has the title. In this case the appellees have the title, and the appellants have neither pleaded nor shown one. Owsley, Sr., v. Owsley, Jr. [117 Ky. 47], 25 Ky. Law Rep. 1187, 77 S. W. 399; Taylor v. Shields' Heirs, 5 Litt. 295; Jones v. McCauley's Heirs, 2 Duv. 14; and Wait, Etc., v. Gover, Etc., 12 S. W. 1068, 11 Ky. Law Rep. 750."

To like effect in Skaggs v. Skaggs, 212 Ky. 836, 280 S. W. 150, this court spoke as follows:

"Adverse possession to disputed boundary cannot be established, where line not fenced or marked.

"One of two adjoining landowners could not establish title to disputed strip by adverse possession, where line had never been marked nor boundary inclosed. . . .

"That each of adjoining owners built fence along portion of line claimed by one, not pursuant to any agreement to settle dispute, was not establishment of agreed line."

In the instant case the location of the agreed division line was never in dispute, but while so held by appellant the same was never fenced nor any fence built on appellant's property except the short strip of iron fence extending for a distance between the front line and church corner of some 10 feet, or only 1/10 the depth of the strip of land in question.

Further it is admitted that the appellant church has been in possession of its 50-foot lot during all the period of its ownership thereof since 1904, claiming to a well-known, marked, and recognized line, and, such being the case, its entry upon a possession within the boundaries of its deed is an entry and holding of its entire lot. Such was the principle of law announced in the case of Stepp v. Stepp, 216 Ky. 243, 287 S. W. 707, 708, where it was said:

"As was said by this court in Ramsey v. Hughes, 212 Ky. 715, 280 S. W. 99:

" 'The rule is that where one claims under color of title and is in actual possession of a part of the land within his well-defined boundary, the law, by construction, carries his possession to the full extent of his boundary, except that as against actual adverse possession this rule will not prevail, and except that as against superior title this rule will not prevail unless the entry and possession be upon the interference.' . . .

"It follows then that since the evidence herein establishes that appellant has been in the actual possession of a part of the land within his well-defined boundary by living upon it, the law by construction has carried his possession to the full extent of his boundary, because his deed containing a description of the land claimed by him under it so defined the boundary claimed as to give notice of the extent thereof."

Further, in 2 Corpus Juris, 131, sec. 226, the law we deem applicable to the facts of the instant case is thus written:

"Character of possession by permission or license from owner. Ordinary status of possession. A general rule. A possession by permission or license from the owner is not adverse and cannot ripen into title, no matter how long continued or however exclusive it may be. The possession of the occupant under such circumstances is considered as the possession of him upon whose pleasure it continues."

And further in this same volume, on page 134, sec. 230, it is stated:

"Knowledge or notice of disseizee of hostile claim. Nevertheless, the theory on which adverse

possession becomes a perfect title is that the true owner has by his own fault failed to assert his right against the hostile holding, and where possession is originally taken and held under the true owner, a clear, positive, and continued disclaimer and disavowal of title, and an assertion of, an adverse right brought home to the true owner, are indispensable before any foundation can be laid for the operation of the statute of limitations. Without this the length of the occupancy is immaterial and does not affect the title, and possession for the full period of limitation must have elapsed after such repudiation before title based thereon can be acquired. If the rule were otherwise the greatest injustice might be done. Without such knowledge the adverse claimant has the right to rely upon the fiduciary relation under which the possession was originally taken and held.''

And a like rule in Kentucky is stated in Chesapeake & O. Ry. Co. v. Rosskamp, 179 Ky. 175, 200 S. W. 496. Also see Gossom v. Donaldson, 18 B. Mon. 241, 68 Am. Dec. 723; Padgett v. Decker, 145 Ky. 227, 140 S. W. 152; Cryer v. McGuire, 148 Ky. 100, 146 S. W. 402, Ann. Cas. 1913E, 485; Frazier v. Morris, 161 Ky. 76, 170 S. W. 496; Miller v. Shackleford, 4 Dana, 264; Chiles v. Jones, 4 Dana, 479; Shackelford v. Smith, 5 Dana, 232; Bruce v. Taylor, 2 J. J. Marsh. 160; Hall v. McLeod, 2 Metc. 98, 74 Am. Dec. 400.

Guided by this rule of law as announced in the cases and textbook authorities as quoted and cited, supra, and conceiving them applicable to the determination of the question presented by this appeal as to whether appellees secured a title to the strip of land in question through their alleged adverse use thereof, where it is admitted or at least undenied that such original use arose as an amicable and permissive one, and that no notice in the change of the character of use was ever given or brought home to the appellant, and that, to convert a permissive use of the strip in question into an hostile or adverse use, it was necessary for appellees to have given notice to appellant of such change in the character of its use and holding of its land, and thereafter to continuously and adversely have held the same for fifteen years, we are of the opinion that the same was not done and was clearly shown not to have been done by the evi-

dence, and that upon such showing the appellant was entitled to a directed verdict in its favor.

Therefore, for the reason herein above indicated, we conclude that the judgment of the lower court will have to be, and is hereby, reversed.