RENDERED:  FEBRUARY 12, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1226-MR

DAMIAN J. RICO (SAME PERSON
AS DAMIAN JIMENEZ) AND CARA
L. JIMENEZ                                                  APPELLANTS


APPEAL FROM CARROLL CIRCUIT COURT
v.                     HONORABLE R. LESLIE KNIGHT, JUDGE
ACTION NO. 16-CI-00145


WILLIAM PATRICK HILL                                        APPELLEE


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; TAYLOR AND L. THOMPSON,
JUDGES.

TAYLOR, JUDGE:  Damian J. Rico, same person as Damian Jimenez, and Cara L.

Jimenez (collectively referred to as the Jimenezes) bring this appeal from a March

25, 2019, Opinion and Order of the Carroll Circuit Court granting William Patrick

Hill's Motion for Partial Judgment Notwithstanding the Verdict and from an

August 1, 2019, Agreed Order.  We reverse and remand.

This case involves a dispute between adjoining landowners concerning the proper location of their common boundary line and the doctrine of adverse possession. On May 26, 1996, William Patrick Hill acquired ownership of a tract of real property located at 507 Clay Street, Carrollton, Kentucky. A home was situated upon the tract, and Hill resided therein. Directly abutting Hill's real property was a tract of real property located at 415 Fifth Street, Carrollton, Kentucky, and owned by Roger Unker. Unker obtained title to his real property in 1995, and he resided in a residence located on his property.

Shortly after Hill acquired ownership to his property in 1996, Hill and Unker met at Hill's request. According to Hill, he wanted to install a pool upon his property and needed to construct a fence per a city ordinance. At trial, Hill testified that he explained to Unker that Hill needed room in his side yard for the pool and fence. Hill further testified that he and Unker decided upon a point and agreed that the fence would be located there. Hill then stated that he constructed a fence at the agreed location in 1996.

Subsequently, on April 25, 2002, Unker conveyed his real property at 415 Fifth Street to the Jimenezes. A few years later, in 2005, Hill rebuilt the fence between the properties. Hill testified that the new fence was in the exact location as the old fence; however, Damian Jimenez testified that the new fence was not in

-2-

the same location. In fact, Damian stated that the new fence was moved to farther encroach upon his property.

In 2016, the Jimenezes started construction on a garage addition to their home. The Jimenezes began the construction without the required permit from the city. Hill objected to the garage construction and believed that the garage was located too close to his property per set-back zoning mandates. The Jimenezes then sought a building permit for the garage. Eventually, the building permit was granted after the Carrollton Board of Adjustment concluded that Hill had encroached upon the Jimenezes' property by construction of the fence per the relevant deed descriptions.

On October 10, 2016, Hill filed a complaint in the Carroll Circuit Court against the Jimenezes.[1] Therein, Hill claimed, *inter alios*, that he had acquired a strip of the Jimenezes property by adverse possession:

> 4. Openly and continuously since at lease [sic] May 1996, plaintiff has notoriously occupied and possessed a strip of land running the length of plaintiff's west line and defendants' east line, his use, occupation and possession being marked by a wooden fence, under a claim of right, which strip of land is now under dispute and is described as follows:
>
> > Beginning at a point, being the southwest corner of plaintiff's land (see plat at Deed Book 127, page 360) and the southeast

---

[1] William Patrick Hill filed a supplemental complaint on December 13, 2017.

corner of defendants' land, thence with the parties' common line as depicted on the aforesaid plat N 10° 10' 02" a distance of 104.76 feet a point being the northwest corner of plaintiff's land and the northeast corner of defendants' land; thence with defendants' north line S 79° 37' 12" W a distance of 5 feet to a point; thence with wooden fence and parallel to the parties' aforesaid common line S 10° 10' 02" E a distance of 104.76 feet to a point I [sic] defendants' south line as depicted of the aforesaid plat, thence with said south line N 79° 29' 50" E a distance of 5 feet to the place of beginning.

5. As aforesaid, believing his deed at Deed Book 127, page 357 having conveyed fee simple to the above-described property to him and having exercised his claim of right to that property over 20 years in the manner aforesaid, plaintiff has acquired and now holds that title by and through his adverse possession of the land.

6. Plaintiff is entitled to a judgment from his [sic] Court declaring him to be the absolute holder of fee simple title to the above-described property.

October 10, 2016, Complaint at 2.

The Jimenezes filed answers and a counterclaim. In the answers, the Jimenezes denied that Hill had adversely possessed the strip of property, and by counterclaim, the Jimenezes claimed that Hill had committed trespass upon their property and sought damages therefore.

A jury trial was commenced on August 14, 2018. After the close of evidence, both parties moved for directed verdicts. The trial court denied the motions. The jury ultimately found that Hill had not adversely possessed the strip of land in dispute and awarded the Jimenezes $6,000 in damages for trespass. In an August 27, 2018, Trial Order and Judgment, the trial court rendered judgment in accordance with the jury's verdict and ordered that the Jimenezes recover $6,000 in damages for Hill's trespass.

Thereafter, Hill filed a Motion for Partial Judgment Notwithstanding the Verdict (JNOV). Hill argued that his claim of adverse possession to the strip of land enclosed by the fence was proved by the uncontroverted evidence:

> At trial [Hill] adduced clear proof that each of those elements had been more than sufficiently met. No contradictory evidence was brought forth placing any of [Hill's] proof in this regard at issue in any meaningful way.
>
> There were questions about whether the replacement fence erected in 2007 incorporated all, some or none of the then-existing posts. . . .

Motion at 2. By Opinion and Order entered March 25, 2019, the trial court granted the motion for a partial JNOV and reasoned:

> The Court finds that if [Hill] had never rebuilt the fence, there would be no question that [Hill] had adversely possessed the fenced-in area for the requisite fifteen-year period. However, [the Jimenezes] argued, and the jury apparently believed, that the rebuilding of a new fence in a slightly different location broke the

continuity of possession required for an adverse possession claim. But this argument does not hold up under scrutiny.

First the Court does not believe that simply tearing down and rebuilding an already existing fence over the course of a few days would restart the "clock" for adverse possession. The act of fencing in property constitutes actual, hostile, open, notorious, exclusive, and continuous possession. Rebuilding the exact same fence does not destroy any of those elements. But consider a "rebuilt" fence that is moved a foot or two further into the disseized landowner's property. While the disseizor is now adversely possessing more land than he was originally, he has not ceased his possession of the land encompassed by the original fence . . . while the rebuilt fence starts a "new" adverse possession clock for the additional adversely possessed land, it does not stop the "old" clock for the original area of adverse possession. . . .

Clear, convincing, and uncontroverted evidence established that [Hill] adversely possessed land up to the original fence line for fifteen years prior to this case being filed. However, it did not establish that [Hill] adversely possessed land up to the new fence line for fifteen years prior. The difficulty is that the jury's verdict did not reflect any findings regarding the difference between the land encompassed by the rebuilt fence and by the original fence, or if there even was a difference. If the rebuilt fence only encompassed the same property as the original fence, then there could be no trespass.

The Court therefore finds that a new trial is warranted, limited to the following issues of fact:

1) Did the rebuilt fence encompass more of [the Jimenezes'] property than the original fence?

2) If so, are [the Jimenezes] entitled to damages for any trespass established by the rebuilt fence, and if so, in that amount?

Opinion and Order at 4-6.

Before a new trial was held, the trial court rendered an Agreed Order to Dismiss New Trial Issue. Therein, the trial court noted:

[T]he [Jimenezes] having agreed to waive any claim they may have for damages resulting from taking of their land between the old fence and the new fence, if any, the [Jimenezes] having stated their intention to appeal the remaining portion of the Court's Partial JNOV and reinstate the Jury Verdict with the agreement that if the Appellate Court upholds the Court's Partial JNOV, [Hill] will retain the fence in its present location and the land contained within the fence with no further claim being made to said land by the [Jimenezes] and to hold that this case, and specifically, the Partial JNOV is now final and appealable as of the date of this order and [Hill], by Counsel, having agreed to this motion and order,

IT IS HEREBY ORDERED AND ADJUDGED that the issue for which the Court ordered a new trial by its Opinion and Order entered March 25, 2019[,] is hereby dismissed by agreement of the parties, with the understanding that the [Jimenezes] intend to appeal the Partial JNOV, seeking to have the Jury Verdict reinstated, but, in the event the Partial JNOV is upheld by the Appellate Courts, [Hill] will retain ownership of the fence at its present location and the land contained within the fence with no further claim being made to said land by the [Jimenezes] and the case is now final and appealable as of the date this order is entered.

Agreed Order at 1-2. This appeal follows.

-7-

The Jimenezes contend that the trial court improperly granted Hill's motion for a partial JNOV. In particular, the Jimenezes maintain that evidence was presented at trial from which the jury could reasonably find that Hill did not adversely possess the enclosed strip of property. The Jimenezes initially point to Hill's own testimony concerning his meeting with Unker in 1996. According to the Jimenezes, the jury could have reasonably believed that Unker gave Hill permission to encroach upon the disputed property, thus negating Hill's claim of adverse possession. The Jimenezes also cite to evidence that Hill rebuilt the fence in 2005 and that the new fence farther encroached upon the Jimenezes' property. Consequently, the Jimenezes argue that Hill failed to demonstrate a well-defined boundary.

To prove adverse possession, the claimant must demonstrate that the possession was 1) hostile and under a claim of right, 2) actual, 3) exclusive, 4) continuous, and 5) open and notorious. *Moore v. Stills*, 307 S.W.3d 71, 77 (Ky. 2010). Additionally, "[t]hese common law elements of adverse possession must all be maintained for the statutory period of fifteen years, and it is the claimant's burden to prove them by clear and convincing evidence." *Moore*, 307 S.W.3d at 77-78. And, in reviewing a judgment notwithstanding the verdict, "we must review all the evidence presented to the jury and must uphold the trial court's decision if after all the evidence is construed most favorably to the verdict winner,

a finding in his favor would not be made by a reasonable" juror. *Moore*, 307 S.W.3d at 76-77.

As to the permission issue, Hill testified that he desired to construct a pool upon his property in 1996 and also needed to construct a fence in accordance with a city ordinance. He arranged a meeting with Unker and explained to Unker that he needed room in the side yard for the fence and pool. According to Hill, he and Unker decided upon a point between their properties and that is where Hill constructed the original fence.

It is well established that entry onto property by permission of the title owner cannot generally ripen into adverse possession. *United Hebrew Congregation of Newport v. Bolser*, 50 S.W.2d 45, 47 (Ky. 1932); *Phillips v. Akers*, 103 S.W.3d 705, 708 (Ky. App. 2002). Here, Hill never specifically stated that Unker gave Hill permission to build the fence upon Unker's property. Rather, Hill's testimony suggests that he and Unker merely agreed as to the boundary between their respective properties. In Kentucky "where the parties to an [oral] agreement fixing the boundary line each take possession to the agreed line and exercise possession for the statutory period [15 years]," the boundary can become fixed through adverse possession. *Faulkner v. Lloyd*, 253 S.W.2d 972, 974 (Ky. 1952). Therefore, Hill and Unker's agreement as to a boundary does not bar Hill's adverse possession claim.

As to a well-defined boundary, the evidence showed that the original fence was built in 1996, and the new fence was built in 2005. Hill filed the current action in 2016. The evidence was contradictory upon whether Hill rebuilt the new fence in the exact location of the original fence. Damian testified that the new fence was not in the same location as the original fence but was moved to farther encroach upon his property. By contrast, Hill testified that both the original fence and new fence were in the same location.

Viewing the evidence most favorable to the Jimenezes, a reasonable juror could have believed that the new fence was not in the same location as the original fence. And, as the property enclosed by the new fence was not possessed by Hill for fifteen years, his adverse possession claim to such newly enclosed property would fail. However, it was uncontroverted that Hill possessed the property enclosed by the original fence for fifteen years. So, the location of the original fence is pivotal to Hill's claim of adverse possession.

The Kentucky Supreme Court has held that "clear and convincing evidence, of a well-defined boundary is an essential element of an adverse possession claim." *Moore*, 307 S.W.3d at 81. Therefore, it was incumbent upon Hill to demonstrate by clear and convincing evidence a well-defined boundary, which herein was the location of the original fence. Hill, nonetheless, did not request a jury instruction upon the location of the original fence and generally

-10-

denied that the original and new fences were in different locations. Viewing the evidence most favorably to the Jimenezes, the jury could have reasonably believed that Hill failed to demonstrate by clear and convincing evidence the location of the original fence and, thus, a well-defined boundary, which is an essential element of adverse possession. *See Moore*, 307 S.W.3d at 81. For this reason, a reasonable juror could find in favor of the Jimenezes as to Hill's claim of adverse possession. Thus, the granting of JNOV was in error.

In sum, we conclude that the trial court erroneously granted the partial judgment notwithstanding the verdict and that the jury's verdict should be reinstated.

For the foregoing reasons, the Opinion and Order of the Carroll Circuit Court is reversed and remanded for proceedings consistent with this Opinion.

ALL CONCUR.

BRIEF FOR APPELLANTS:

James C. Monk
Carrollton, Kentucky

BRIEF FOR APPELLEE:

Stephen P. Huddleston
Warsaw, Kentucky